In the Matter of The Honorable
William S. ROWE, Jr., a
Judicial Officer.

Delaware Court on the Judiciary.

Submitted Sept. 8, 1989.
Decided Oct. 27, 1989.

James S. Green, Connolly, Bove, Lodge & Hutz, Wilmington, for respondent.

Craig A. Karsnitz, Young, Conaway, Stargatt & Taylor, Georgetown, assigned as presenter.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH, and HOLLAND, JJ., ALLEN, Chancellor, and STIFTEL, President Judge.

CHRISTIE, Chief Justice:

This is a proceeding instituted in the Court on the Judiciary on December 27, 1988, pursuant to art. IV, § 37 of the Delaware Constitution [1] and the Rules of Procedure of the Court on the Judiciary ("Rules") to inquire into charges of judicial misconduct brought against the respondent, William S. Rowe, Jr. The Preliminary Investigatory Committee ("Committee") of the Court filed a report on February 9, 1989 containing its conclusion that there is probable cause to believe that Judge Rowe may have violated the Canons of the Delaware Judges' Code of Judicial Conduct ("the Code") and engaged in wilful misconduct in violation of the Delaware Constitution. The Court then appointed a Board of Examining Officer ("Board"). The Board issued its report on June 7, 1989 and found that Judge Rowe had violated Canons 2 and 3 of the Code [2] and that his actions constituted wilful misconduct under

---

**1.** Del. Const. art. IV, § 37 states:

§ 37. *Court on the Judiciary.*

Section 37. A Court on the Judiciary is hereby created consisting of the Chief Justice and the Associate Justices of the Supreme Court, the Chancellor, and the President Judge of the Superior Court.

Any judicial officer appointed by the Governor may be censured or removed or retired by the Court on the Judiciary as herein provided. . A judicial officer may be censured or removed by virtue of this section for wilful misconduct in office, wilful and persistent failure to perform his duties, the commission after appointment of an offense involving moral turpitude, or other persistent misconduct in violation of the Canons of Judicial Ethics as adopted by the Delaware Supreme Court from time to time.

A judicial officer may be retired by virtue of this section for permanent mental or physical disability interfering with the proper performance of the duties of his office.

No judicial officer shall be censured or removed or retired under this section unless he has been served with a written statement of the charges against him, or of the grounds of his retirement, and shall have had an opportunity to be heard in accordance with due process of law. The affirmative concurrence of not less than two-thirds of the members of the Court on the Judiciary shall be necessary for the censure or removal or retirement of a judicial officer. The Court on the Judiciary shall be convened for appropriate action upon the order of the Chief Justice, or upon the order of any other three members of the Court on the Judiciary. All hearings and other proceedings of the Court on the Judiciary shall be private, and all records except a final order of removal or retirement shall be confidential, unless the judicial officer involved shall otherwise request.

Upon an order of removal, the judicial officer shall thereby be removed from office, all of his authority, rights and privileges as a judicial officer shall cease from the date of the order, and a

vacancy shall be deemed to exist as of that date. Upon an order of retirement, the judicial officer shall thereby be retired with such rights and privileges as may be provided by law for the disability retirement of a judicial officer, and a vacancy shall be deemed to exist as of the date of retirement.

In the absence or disqualification of a member of the Court on the Judiciary, the Chief Justice, or in his absence or disqualification the Senior Associate Justice, shall appoint a substitute member *pro tempore*.

The Court on the Judiciary shall have:

(a) the power to summon witnesses to appear and testify under oath and to compel the production of books, papers and documents, and

(b) the power to adopt rules establishing procedures for the investigation and trial of a judicial officer hereunder.

**2.** The Delaware Judges' Code of Judicial Conduct provides in part:

Canon 2. *A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities.*

*       *       *       *       *       *

B. A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment.

Canon 3. *A Judge Should Perform the Duties of His Office Impartially and Diligently.*

*       *       *       *       *       *

C. Disqualification.

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

(d) He or his spouse, or a person within the third degree of relationship to either of them....

(i) Is a party to the proceeding....

D. Remittal of Disqualification.

A judge disqualified by the terms of Canon 3C(1)(c) or Canon 3C(1)(d) may, instead of

the constitution. The Board recommended that Judge Rowe be suspended from office for a period of six months and that he be publicly censured.

Judge Rowe filed exceptions to the Board's report on June 19, 1989. The Court on the Judiciary ordered further proceedings before the entire Court and appointed an attorney to present the arguments in favor of the Board's report. Ct. Jud.R. 9(c)(1). Briefs were filed by both the respondent and the presenter. The matter was heard upon oral argument on August 22, 1989. By further order of the Court, both parties then filed supplemental memoranda on the issue of whether the Court on the Judiciary has the authority to suspend a judicial officer pursuant to the powers vested in it by the Delaware Constitution. We conclude that the power to suspend is included in the express constitutional powers of removal, retirement, and censure which are granted to this Court in art. IV, § 37 of the Delaware Constitution.

We uphold the report of the Board and find that Judge Rowe's actions constitute wilful misconduct in office. We adopt the Board's recommendation of suspension for six months and public censure as the appropriate sanction for the instances of judicial misconduct found to have been committed.

Judge Rowe has been a justice of the peace for the State of Delaware since June, 1980, presiding in New Castle County, Delaware. On December 11, 1984, William S. Rowe, III ("defendant"), Judge Rowe's son, was arrested and charged by the Delaware State Police with driving under the influence of alcohol in violation of 21 *Del.C.* § 4177. No accident was involved and there was no personal injury or property damage. The arresting officer called Justice of the Peace Court No. 10 and informed Judge Rowe that his son had been arrested and charged with driving under the influence of alcohol. The police officer did not bring the defendant to Justice of the Peace Court No. 10 on the night of the arrest, but Judge Rowe told the officer to "do his duty" in regard to his son's situation.

The defendant was initially scheduled to be arraigned in Justice of the Peace Court No. 10 on December 22, 1984, a day Judge Rowe was also scheduled to hear cases in Court No. 10. On December 19, 1984, Judge Rowe *sua sponte* continued his son's arraignment until December 29, 1984, also a date that Judge Rowe would be sitting in Court No. 10. The defendant appeared at Court No. 10 for arraignment on December 27, two days earlier than scheduled. On that date, Judge Rowe, who was presiding, arraigned his son and entered an order permitting his son to elect to enter the State of Delaware First Offender's Program ("FOP"). At the time of the arraignment, there was no one present in the courtroom other than Judge Rowe and his son, the defendant. He also failed at that time to advise his son of the consequences of a subsequent conviction for the same offense.

At the time of his arrest, the defendant had contacted an attorney who spoke with the arresting police officer on the evening of the arrest. The arresting officer informed the defendant's attorney that he did not object to a finding of first offender status in this case, and the attorney advised the defendant to enter the FOP. The police officer marked the court copy of the summons "Yes" in the box marked First Offenders Eligible, and wrote a note in the margin stating: "Yes 1st offender." Thus, the summons presented to Judge Rowe at his son's hearing indicated that his son was eligible for the FOP.

Although he met all of the other requirements, this defendant was in fact not eligible for the FOP without a special Attorney General's waiver because his blood alcohol level was alleged to be above the maximum amount permitted for the FOP. At the

withdrawing from the proceeding, disclose on the record the basis of his disqualification. If, based on such disclosure, the parties and lawyers, independently of the judge's participation, all agree in writing that the judge's relationship is immaterial or that his financial interest is insubstantial, the judge is no longer disqualified, and may participate in the proceeding. The agreement, signed by all parties and lawyers, shall be incorporated in the record of the proceeding.

time of the offense, it was not unusual for the State of Delaware, through the Attorney General's Office, to waive the blood alcohol level requirement so as to allow the case to proceed through the FOP. However, an Attorney General's waiver was not executed in this case.

When his son appeared for arraignment and enrollment in the FOP, Judge Rowe did not advise his son that a mandatory prison term would be imposed in the event of a conviction for a like offense within five years of the initial offense.

The son was again arrested in June, 1988 and charged with driving under the influence of alcohol. A trial was conducted on November 9, 1988 before Justice of the Peace Charles M. Stump. The defendant was convicted of the offense and a presentence hearing was ordered. The presentence hearing was held on December 16, 1988. The central question at the hearing was whether, in the 1984 proceeding before Judge Rowe, the defendant, Judge Rowe's son, had been provided with proper notice of the effect of another DUI conviction within five years of his entering the FOP.

During the hearing, a certified transcript of the defendant's arraignment on the prior (1984) DUI charge was entered in evidence. The transcript indicated that the defendant was arraigned and permitted to enter the FOP in December, 1984. The transcript failed to indicate that the defendant was advised of the penalties which he would face if he were to be convicted of a subsequent DUI charge within the five-year period. Judge Stump concluded that he was therefore obligated under Delaware law to sentence the defendant as a first offender.

Judge Rowe was called as a witness by the deputy attorney general at the 1988 hearing. He testified that he did not inform his son that a mandatory prison term would be imposed in the event of another DUI conviction within five years, either during the time between his son's arrest and the hearing, or at the hearing itself.

He also testified that he suggested that his son enter the FOP. The record revealed that Judge Rowe had signed the order in 1984 directing his son's entry into the FOP, and he had countersigned the consent form signed by his son.

Upon reading the transcript of the 1984 case and hearing the testimony of Judge Rowe, Judge Stump became concerned that Judge Rowe appeared to have acted in violation of the Delaware Judges' Code of Judicial Conduct. He notified Deputy Chief Magistrate Morris Levenberg of his concern, and Judge Levenberg subsequently filed a complaint against Judge Rowe in the Court on the Judiciary. The matter was referred to the Preliminary Investigatory Committee pursuant to Rule 3 of this Court.

In Judge Rowe's response to the allegations raised in the complaint, he contended that his son's arraignment was governed by the standard order of procedure followed in every other case where a person is similarly charged. He stated that he advised his son of the charge and penalty attached, his right to trial and his choice of courts. He also advised his son that he might qualify for the First Offender Program, provided he met the requirements. He stated that he found the traffic summons where the police officer had marked "Yes" as to the First Offenders Eligible and where he had written "Yes 1st offender" in the margin sufficient evidence to meet the eligibility requirement. He further stated, "[m]y principal motivation in arraigning my son was to be sure he was thoroughly impressed with the seriousness of his offense, not because I was in a position to give him any special advantage."

Judge Rowe further contended that his willingness to testify on his son's behalf at the 1988 trial was for "the sole reason that I was satisfied beyond any doubt he was not guilty of DUI as he was charged." He stated that the presiding judge was aware that he was to be called as a witness and was aware it was in a non-judicial role.

After reviewing the complaint and Judge Rowe's response, the Committee found that there was probable cause to believe that Judge Rowe's actions and involvement in his son's 1984 hearing may have violated Canons 1 and 2 of the Code and constituted

wilful misconduct in office in violation of art. IV, § 37 of the Delaware Constitution.

Pursuant to the procedure outlined by the Rules of the Court on the Judiciary and by order of the Chief Justice, an Examining Board was then convened. An order was issued by the Board to Judge Rowe to show cause why he should not be censured, suspended, removed, or retired as a result of the findings of the Committee. Judge Rowe answered the order to show cause, denying all charges against him. A hearing was held on April 20, 1989.

Judge Rowe testified that on December 27, 1984, when his son appeared for arraignment and enrollment in the FOP, he "lectured" him regarding the seriousness of the offense, but did not advise his son at any stage of the proceeding that a mandatory prison term would be imposed in the event of a conviction for the same offense within five years of the initial offense. According to Judge Rowe, this was the standard practice of the great majority, if not all, of the Justices of the Peace in New Castle County in 1984.

Judge Rowe testified that he acted in his son's case because he was angry and embarrassed and because he wanted to be sure his son "was thoroughly impressed with the seriousness of his offense." Judge Rowe admitted that another justice of the peace also could have emphasized the offense's seriousness, but he believed he could do so more effectively. Although he was having regular contact with his son around the time of his arrest, Judge Rowe testified he did not otherwise talk to his son about the circumstances of the arrest. He also testified that he acted in his son's case because he believed no judicial discretion existed in connection with the FOP election, inasmuch as the program is administrative in nature and no judgment of conviction results from the election.

Judge Rowe admitted that he was the only judicial officer who acted upon his son's 1984 case and that such action violated the Code. He insisted that at the time of this incident he could not recall being specifically aware of the prohibition on hearing cases involving family members, although he acknowledged there were some cases involving family members which he understood even then to be inappropriate for a judge to hear and determine.

The Board concluded that the evidence presented at the hearing constituted clear and convincing evidence that Judge Rowe had violated Canons 2 and 3 of the Code in that he was required to disqualify himself in the criminal proceeding involving his son in 1984. The Board also concluded that Judge Rowe's conduct rose to the level of wilful misconduct under art. IV, § 37 of the Delaware Constitution because he knowingly and intentionally participated in his son's case over a period of time.

The Board found, however, that nothing presented to the Board suggested that Judge Rowe improperly sought to use the influence of his office to benefit his son by having the charge dropped or reduced. In addition, the Board found that Judge Rowe had established a reputation for professionalism during his tenure as a justice of the peace. As indicated, the Board recommended that Judge Rowe be suspended as a justice of the peace for a period of six months and that he be publicly censured.

## I.

Before we review the Board's findings of fact or its conclusions of law, we address the procedural framework within which this Court operates. This is a case of first impression in this State. This Court has not previously considered either the standard of review that governs a final report of the Board or the standard of proof that governs judicial conduct proceedings.

■ The initial procedural question concerns the scope of the Court's review. The final report of the Board has the force and effect of a master's report in the Court of Chancery. Ct.Jud.R. 9(a).

If the Committee states in its report that there is probable cause to believe that the judicial officer involved may be subject to censure, suspension, removal, or retirement, then the Court is required to appoint a Board of Examining Officers. Ct.Jud.R. 4 and 5. The Board then may conduct a hearing, take evidence, and make a report

and recommendation to the Court on the Judiciary. Ct.Jud.R. 7 and 8.

The recommendation of the Board is only a recommendation. "[T]he term 'recommendation' manifests an intent to leave the Court unfettered in its adjudication." *In re Nowell*, 293 N.C. 235, 237 S.E.2d 246, 254 (1977). "[The master] ... can make no final determination of a judicial matter, since all his acts become binding only by being approved and adopted by the court ..." *A.L.W. v. J.H.W.*, Del.Supr., 416 A.2d 708, 711 (1980) (citing 30A C.J.S. Equity § 521 (1965)); *State v. Wilson*, Del.Supr., 545 A.2d 1178, 1184 (1988). The vesting of such power in the Court on the Judiciary is inherent in the constitution. Del. Const. art. IV, § 37. Therefore, this Court is obligated to conduct its own evaluation of the evidence adduced by the Board and reach an independent conclusion as to the sanctions to be imposed.

The Rules establish that the proper standard of proof in cases before this Court is clear and convincing evidence. Ct.Jud.R. 7(b). Clear and convincing evidence is a higher evidentiary standard than mere preponderance, but a lesser standard than proof beyond a reasonable doubt. *See* 30 Am.Jur.Evidence § 1167 (1967). Clear and convincing evidence "is best described as evidence which produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" *Kaszuk v. Bakery and Confectionary Union*, N.D.Ill., 638 F.Supp. 365, 374 (1984), *aff'd in part, remanded, and reh'g denied*, 791 F.2d 548 (7th Cir.1986) (citing *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 2438, 81 L.Ed.2d 247, 254 (1984)). The "highly probable" standard appears to provide an appropriate balance between "preponderance of the evidence" and "beyond a reasonable doubt." *Kaszuk*, 638 F.Supp. at 374.

We now consider the threshold contention made by Judge Rowe that the record does not establish by clear and convincing evidence that he engaged in wilful misconduct in violation of the constitution.

■ The meaning of the term "wilful misconduct" in a disciplinary proceeding has not previously been addressed by this Court. We rule today that "wilful misconduct" as used in art. IV, § 37 of the Delaware Constitution includes the improper or wrongful use of the power of his/her office by a judge acting intentionally, knowingly, voluntarily, or with gross unconcern for his conduct, which would bring the judicial office into disrepute. It is more than a mere error of judgment or an act of negligence. See generally, *In re Nowell*, N.C.Supr., 237 S.E.2d 246 (1977); *Matter of Edens*, 290 N.C. 299, 226 S.E.2d 5 (1976); *Gubler v. Commission on Judicial Qualifications*, 37 Cal.3d 27, 207 Cal.Rptr. 171, 688 P.2d 551 (1984).

■ "Willful" is a word "of many meanings, its construction often being influenced by its context". *Screws v. United States*, 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495, 1502 (1945) (citing *Spies v. United States*, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418, 422 (1943)). The word often ·denotes an act which is intentional, or knowing, or voluntary rather than accidental. *United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381, 385 (1933). "[W]hen used in a criminal statute, it generally means an act done with a bad purpose." *Id.* We hold, however, that a finding of bad faith is not necessary to a finding of wilful misconduct in a disciplinary proceeding.

Several jurisdictions have addressed the meaning of the term "willfully" in the context of judicial disciplinary proceedings. The Supreme Court of North Dakota concluded that the term "willfully", when used in disciplinary proceedings involving actions contrary to the Canons of the Code of Judicial Conduct, should be construed to mean merely that the acts were the performer's free will and were not done under coercion. *In the Matter of Cieminski*, N.D.Supr., 270 N.W.2d 321, 327 (1978). The Court's basis for this definition is that judges must be and are held to higher standards than laymen. Judges symbolize the law and justice and consequently, their actions and behavior will reflect favorably

or unfavorably on the integrity of the judiciary and the high respect required in the administration of justice. "It is not merely sufficient to do justice but the public and society must have good cause and reason to believe that justice, in fact, is being done." *Id.* at 327.

Other jurisdictions have held that bad faith is a necessary element of wilful misconduct. *In re Nowell*, 237 S.E.2d at 255; *Matter of Edens*, 226 S.E.2d at 9; *Gubler*, 207 Cal.Rptr. at 182, 688 P.2d at 562. The Supreme Court of North Carolina has defined "bad faith" in its broadest sense. The term "bad faith" necessarily would encompass conduct involving moral turpitude, dishonesty, or corruption, and also any knowing misuse of the office, whatever the motive. However, these elements are not necessary to a finding of bad faith. A specific intent to use the powers of the judicial office to accomplish a purpose which the judge knew or should have known was beyond the legitimate exercise of his authority constitutes bad faith. *In re Nowell*, 237 S.E.2d at 255; *Matter of Edens*, 226 S.E.2d at 5.

The Supreme Court of California has defined the term "bad faith" more narrowly. "[B]ad faith entails actual malice as the motivation for a judge's acting ultra vires." *Gubler*, 207 Cal.Rptr. at 182, 688 P.2d at 562.

Both the North Carolina and California Constitutions provide, however, for an alternative method by which a judge can be disciplined. The constitutions state that a judge may be censured or removed for "conduct prejudicial to the administration of justice that brings the judicial office into disrepute." N.C. Const. art. IV, § 17(2); Cal. Const. art. VI, § 18(c). A judge may, through negligence or ignorance not amounting to bad faith, behave in a manner prejudicial to the administration of justice so as to bring the judicial office into disrepute. *In re Nowell*, 237 S.E.2d at 255; *Gubler*, 207 Cal.Rptr. at 182, 688 P.2d at 562. "Bring[ing] the judicial office into disrepute does 'not require notoriety, but only that the conduct be damaging to the esteem for the judiciary held by members of the public who observed such conduct.' "

*Gubler*, 207 Cal.Rptr. at 182, 688 P.2d at 562 (citing *Wenger v. Commission on Judicial Performance*, 29 Cal.3d 615, 175 Cal.Rptr. 420, 423 n. 4, 630 P.2d 954, 957 n. 4 (1981)).

■ The Delaware Constitution does not contain the additional lesser offense that is contained in the North Carolina or California constitutions. This Court finds that any action or behavior of a judge which destroys the public confidence in the integrity and impartiality of the judiciary will tend to cause disrespect for the law itself. We are therefore not persuaded that proof of more than intent or gross unconcern is required by the term "wilful" as it is used in the Delaware Constitution.

Judge Rowe concedes that he violated Canons 2 and 3 of the Code, but he contends that such an isolated violation does not rise to the level of wilful misconduct under the wording of the constitution. He argues that his violation was not conscious and purposeful and thus, it has not been shown by clear and convincing evidence that he acted intentionally. He asks us to hold that although he consciously participated in his son's case, he did not consciously violate the canons that proscribe such action.

According to Judge Rowe, the pressure of the situation made him lose sight of the obligations imposed upon him by the Code. However, Judge Rowe knowingly and intentionally participated in his son's case over a period of time. Judge Rowe was informed of his son's arrest on December 11, the date of the arrest. Arraignment was scheduled before him for December 22. On December 19, Judge Rowe acted on his own initiative to continue his son's arraignment to a later date when he would also be presiding. The actual arraignment occurred two days earlier than scheduled, on December 27.

Judge Rowe had at least eight days during which to consider and reflect on his decision to personally handle his son's case. We agree with the findings of the Board that the passage of time between the initial notice of the arrest, the initial scheduling of the arraignment, the continuance, and

the actual date of arraignment diminishes the claim that the stress of the incident caused a temporary lapse of judgment. We can understand that Judge Rowe was faced with an embarrassing situation, but the inescapable fact is that he proceeded to preside over his son's criminal proceeding pursuant to a decision to do so, which he carried out over a period of time. He did so knowingly and intentionally. This indicates to us a continuing failure on the part of Judge Rowe to recognize his responsibilities under the Code.

Respondent also contends that a judge's participation in a proceeding in which a relative is a participant is not a *per se* violation of the Code because disqualification can be waived pursuant to Canon 3 D. Judge Rowe further contends that since election to enter the FOP involved an administrative proceeding, he could not have obtained any advantage in his son's case.

We agree with the Board that participation in the FOP is administrative in nature and that judicial discretion in handling such cases is circumscribed. Nevertheless, some judicial discretion was involved and, ultimately, the responsibility for determining a defendant's eligibility for FOP is a judicial one, to be discharged only by a judge. Further, there can be little doubt that Judge Rowe treated his son differently than other defendants by spending additional time during the proceeding to emphasize the seriousness of the offense. He rescheduled the arraignment without explanation on two different occasions and without any application or reason given for doing so. The only reasonable inference

that can be derived from Judge Rowe's actions is one of favoritism. As the Board found, the fact is that Judge Rowe deliberately participated in his son's case over a span of several days.

We cannot accept Judge Rowe's claim that he was not aware of the specific Canon prohibiting involvement in a family member's case. Judge Rowe admitted he was aware of the Code of Judicial Conduct. He acknowledged he had read at least some portions of the Code before this incident. As the Board noted in its report, "[t]he impropriety and appearance of impropriety of a judicial officer presiding over a matter involving a family member are so starkly apparent that disqualification in such a proceeding is an axiomatic norm of judicial conduct. This cardinal principle should be intuitively obvious to any judicial officer. Violation of such a fundamental norm of behavior, therefore, amounts to misconduct in office." Report of the Board of Examining Officer at page 10 (June 7, 1989).[3]

▪ After a careful examination and analysis of the evidence, and after an evaluation of the findings of fact which are supported by clear and convincing evidence, we find that Judge Rowe, through a persistent series of actions, has engaged in wilful misconduct in office within the meaning of art. IV, § 37 of the Delaware Constitution and that disciplinary action is warranted.

## II.

▪ We next address the issue of whether the power to suspend (unanimously de-

3. This statement of a judge's ethical obligations to eschew any participation in matters involving a person related by blood or marriage should not only be obvious from the plain language of Canons 2 and 3 (see n. 2), but it is underscored by the Reporter's Notes to the Code of Judicial Conduct:

> The disqualification section begins with a general standard that sets the policy for disqualification—that is, "A judge should disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The general standard is followed by a series of four specific disqualification standards that the Committee determined to be of sufficient importance to be set forth in detail. Although the specific standards cover most of the situa-

tions in which the disqualification issue will arise, the general standard should not be overlooked. Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's "impartiality might reasonably be questioned" is a basis for the judge's disqualification.

> Thus, an impropriety or the appearance of impropriety in violation of Canon 2 that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard, as does participation by the judge in the proceeding if he thereby creates the appearance of a lack of impartiality.

Reporter's Notes to Code of Judicial Conduct 60–61 (1973).

clared by the Court on the Judiciary and thus the Supreme Court, in the Rules, to be vested in the Court) is actually within the limits of authority imposed upon the Court by art. IV, § 37 of the Delaware Constitution. Upon the request of the Court, the parties submitted supplemental briefs on this issue. Both respondent and presenter have concluded that the Court does have authority to impose a suspension from office as an included form of discipline under the applicable constitutional provision.

As noted earlier, the Court derives its authority from art. IV, § 37 of the Delaware Constitution, wherein the Court is empowered with the authority to "censure, remove or retire" any judicial officer. The constitutional provision does not specifically provide that the Court may suspend a judicial officer. The Rules, however, assume that the Court has such authority when they state that the Court may suspend a judicial officer upon a finding of misconduct or disability.[4]

When the Rules on the Court on the Judiciary were initially promulgated in 1969, the word "suspended" was not included in any of the provisions regarding sanctions to be imposed for judicial misconduct.[5] By the time the rules were amended in 1974, however, the word "suspending" was included in the provision which listed the various sanctions which could be imposed for judicial misconduct.[6] By including the sanction of suspension in the amendment to the rules, the Court ap-

peared to indicate that the power to suspend was inherent in the powers granted to it by the constitution.

On August 2, 1982, the Court on the Judiciary Rules Advisory Committee was appointed to undertake a general review of the Rules. In considering the proposed revision to the rules which would eventually become effective on October 13, 1983, the Rules Committee emphasized the obvious fact that "any proposal by the Committee must stay within the bounds set forth in art. IV, § 37 of the State Constitution."

The Committee considered the issue of suspension in Proposed Rule 9(c)(6). As noted earlier, the word "suspending" was already included in Rule 9(c)(5). The proposed rule provided that a "certified copy of an order of suspension," as well as an order of removal or retirement, shall be transmitted to the named parties in the rule. The Committee determined that the proposed rule could be reconciled with the confidentiality requirement of art. IV, § 37 and that a constitutional amendment would not be necessary.

On October 13, 1983, the Rules that had been in effect since July 30, 1969 (with amendments) were superseded by the adoption of new Rules of the Court on the Judiciary. The current rules incorporate the 1983 revision to Rule 9(c)(6) and have been set out previously in this opinion in footnote 4. See Ct.R. 9(c)(5) and (6) (1983).

The Court therefore indicated, by the adoption and promulgation of the 1983 re-

---

**4.** Rule 9(c) provides in pertinent part:
(5) At the earliest practical time, the Court shall file a written opinion and order dismissing the charges against the respondent, or censuring, suspending, removing or retiring the respondent under Article IV, § 37 of the Delaware Constitution.
(6) A certified copy of an order of suspension, removal or retirement shall be transmitted forthwith by the Court to the Governor, the State Treasurer and any other official the Court may deem to be directly concerned.

**5.** Rule 9(c) at that time provided:
(7) At the earliest practical time, the Court on the Judiciary shall file a written opinion and order either dismissing the charges against the respondent, or censuring, removing, or retiring the respondent under Article 4, Section 37 of the Delaware Constitution.

(8) A certified copy of any order of removal or retirement shall be transmitted by the Court forthwith to the Governor, the State Treasurer, and any other official the Court may deem directly concerned.

**6.** Rule 9(c) at that time provided:
(6) At the earliest practical time, the Court shall file a written opinion and order dismissing the charges against the respondent, or censuring, *suspending*, removing, or retiring the respondent under Article 4, Section 37 of the Delaware Constitution. (Emphasis added)
(7) A certified copy of an order of removal or retirement shall be transmitted by the Court forthwith to the Governor, the State Treasurer and any other official the Court may deem to be directly concerned.

vised rules, that the constitution not only authorizes the Court to suspend a judicial officer, but also by implication it authorizes the Court to give appropriate notice of that suspension to the necessary parties.

The purpose of art. IV, § 37 of our constitution is the regulation of the conduct of those persons charged with the administration of justice. The aim of proceedings pursuant to this section is to assure the integrity of justice administered in the State by providing for: a) an examination of specific complaints of judicial misconduct, b) the determination of their relation to a judge's fitness for office, and c) remedial acts as to any deficiencies. The constitution provides a system of judicial discipline which is designed to deal with all cases which might arise in any varied factual context. We cannot accept the argument that the drafters of this important amendment to the constitution intended to limit the disciplinary action to "censure, removal, or retirement" with no sanctions available short of retirement or removal except a mere censure.

Other jurisdictions that have addressed this issue have reached similar conclusions. *See In the Matter of Anderson*, 312 Minn. 442, 252 N.W.2d 592 (1977) (holding that, in proceedings for judicial discipline, the Supreme Court has the authority to impose sanctions ranging from censure to removal and that the granting of the power to remove implicitly carries with it the power to impose less severe sanctions short of removal); *In the Matter of Cieminski*, N.D. Supr., 270 N.W.2d 321 (1978) (statute providing for censure or removal of judge impliedly includes any appropriate action in between and thus, Supreme Court has authority to impose censure, assessment of costs, or any other action up to and including removal of judge in disciplinary proceeding).

We conclude that the power to suspend a judicial officer is inherent in the express powers granted to the Court pursuant to art. IV, § 37 of the Delaware Constitution.

### III.

■ Respondent contends that a six-month suspension from office would be an excessive sanction under the circumstances. He points out that the suspension would impose a severe financial hardship. He cites several cases wherein corresponding courts in other jurisdictions have imposed reprimands, rather than suspension, in cases involving similar misconduct.

The presenter in turn cites other cases where suspension or removal were the sanctions imposed upon judicial officers as a result of their involvement in cases with members of their family.

The Court necessarily has wide discretion in imposing sanctions for wilful misconduct in office. In light of our conclusions regarding Judge Rowe's conduct, we hold that under the circumstances the six-month suspension is appropriate.

Finally, respondent contends that a public censure would be in conflict with Rule 10(d) of the Rules of Procedure of the Court on the Judiciary. We find this contention to be without merit. The constitution provides that final orders of removal or retirement are not confidential. We rule that the order of suspension is an order of temporary removal, and it cannot be confidential. Likewise, confidentiality does not apply to a censure accompanying a temporary removal.

It is therefore ordered that effective this date, and for a period of six calendar months thereafter, Judge Rowe is suspended, without compensation, from office. The publication of this opinion will constitute a public censure.

### ORDER

This 27th day of October, 1989, it appears that:

(1) Judge William S. Rowe, Jr. is a judge of Justice of the Peace Court No. 10 in New Castle County for the State of Delaware. In December, 1984, Judge Rowe's son, William S. Rowe, III, was arrested and charged with driving under the influence of alcohol in violation of 21 *Del.C.* § 4177. Judge Rowe presided over proceedings arising out of that arrest including the initial scheduling of his son's arraignment, the continuance of the arraignment, and his son's actual arraignment. He also entered

an order permitting his son to elect to enter the State of Delaware First Offender's Program without first obtaining an Attorney General's waiver.

(2) Judge Rowe's conduct and actions were in direct conflict with Canons 2 and 3 of the Delaware Judges' Code of Judicial Conduct.

(3) Pursuant to Rule 3 of the Rules of Procedure of the Court on the Judiciary, a Preliminary Investigatory Committee found probable cause that Judge Rowe may have violated the Code and may have engaged in wilful misconduct in office as proscribed by art. IV, § 37 of the Delaware Constitution.

(4) Pursuant to Ct.Jud.R. 5, a Board of Examining Officer was appointed. The Board heard testimony, took evidence, and concluded that Judge Rowe had violated Canons 2 and 3 of the Code. The Board found that the violations were committed knowingly and intentionally over a period of time and constituted wilful misconduct in office as proscribed by art. IV, § 37 of the Delaware Constitution. The Board recommended a six-month suspension from office and a public censure. Ct.Jud.R. 7 and 8.

(5) This Court has issued an opinion pursuant to Ct.Jud.R. 9(c)(5), upholding the Board's finding of wilful misconduct and accepting the recommendation of the Board as to the sanctions to be imposed.

NOW, THEREFORE, IT IS ORDERED that:

(a) Effective this day, and for a period of six calendar months thereafter, Judge Rowe is suspended without compensation from office.

(b) A certified copy of this order shall be transmitted to the Governor, the State Treasurer, and to the Administrator of the Justice of the Peace Courts pursuant to Ct.Jud.R. 9(c)(6).