**In re the Honorable Arlene Minus COPPADGE, a Judicial Officer.**

**C.J. No. 12, 2011.**

Supreme Court of Delaware.

Submitted: Dec. 13, 2012.
Decided: Jan. 23, 2013.

Victor F. Battaglia, Sr., Esquire, of Biggs & Battaglia, Wilmington, Delaware, for Judicial Officer.

C. Malcolm Cochran, IV, Esquire, of Richards, Layton & Finger, P.A., Wilmington, Delaware, appointed as Presenting Counsel.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, RIDGELY, Justices, STRINE, Chancellor, VAUGHN, President Judge, and SMALLS, Chief Judge, constituting the available members of the Court on the Judiciary.[1]

1. Chief Judge Chandlee Johnson Kuhn entered her disqualification in this matter.

**PER CURIAM:**

In this disciplinary proceeding that brings a judicial officer before the Court on the Judiciary, we conclude that the judicial officer committed persistent misconduct in violation of Rule 2.5(C) of the Delaware Judges' Code of Judicial Conduct. For that misconduct, we conclude that the judicial officer must be sanctioned.

### The Constitution and Applicable Code Provision

The Delaware Constitution confers authority on the Court on the Judiciary to discipline a judge for:

> wilful misconduct in office, wilful and persistent failure to perform his or her duties, the commission after appointment of an offense involving moral turpitude, or other persistent misconduct in violation of the Canons of Judicial Ethics as adopted by the Delaware Supreme Court from time to time.[2]

Rule 2.5(C) of the Delaware Judges' Code of Judicial Conduct provides that "[a] judge should dispose promptly of the business of the court." [3]

### Procedural Background

The judicial officer in this disciplinary proceeding is Family Court Judge Arlene Minus Coppadge. Judge Coppadge was appointed to her position in 2003.

This proceeding was initiated when Family Court Chief Judge Chandlee Johnson Kuhn sent a notice and amended notice informing the Court on the Judiciary that Judge Coppadge had failed to properly report matters held under advisement. Pursuant to Administrative Directive 175, Chief Judge Kuhn's notice and amended notice (as later supplemented) were treated as a complaint in the Court on the Judiciary.[4]

The Court designated a Panel of the Preliminary Investigatory Committee to investigate the matters identified in the notice and to submit a report determining whether or not there was probable cause to believe that Judge Coppadge may be subject to sanction.[5] On January 13, 2012, the Panel filed a report finding that probable cause existed to believe that Judge Coppadge had violated Rule 2.5(C) of the Delaware Judges' Code of Judicial Conduct, and that she may be subject to sanction.[6]

As mandated by Rule 9 of the Rules of the Court on the Judiciary, the Court appointed a Board of Examining Officer.[7] The Board issued a show cause order to Judge Coppadge and appointed a Presenting Counsel to "conduct an investigation and present evidence on the formal charges." [8] After an evidentiary hearing before the Board,[9] Judge Coppadge and Presenting Counsel submitted proposed findings of fact and conclusions of law.[10]

The Board's final report dated November 28, 2012 found that Judge Coppadge

---

2. Del. Const. art. IV, § 37

3. Del. Judges' Code of Judicial Conduct Canon 2, Rule 2.5(C) (2012).

4. *See* Administrative Directive of the Chief Justice of the Supreme Court, No. 175 (April 1, 2010) (available at http://courts.delaware.gov/Supreme/AdmDir/index.stm).

5. Del. Ct. Jud. R. 5(c), 7.

6. Del. Ct. Jud. R. 7(c).

7. Del. Ct. Jud. R. 9(a). The Court appointed former Supreme Court Justice Joseph T. Walsh to serve as the Board of Examining Officer.

8. Del. Ct. Jud. R. 10(a), (c).

9. Del. Ct. Jud. R. 13.

10. Del. Ct. Jud. R. 14(c).

had engaged in a persistent pattern of delay in the disposition of cases and had failed to comply with the reporting mandates of Administrative Directive 175. The Board recommended the Judge Coppadge be publicly censured. Neither Judge Coppadge nor Presenting Counsel filed exceptions to the Board's report and recommendation.[11]

### The Board's Report

The Board's findings of fact, conclusions of law, and recommended discipline are set forth here: [12]

### FINDINGS OF FACT

This matter originated with the filing of an initial complaint by Family Court Chief Judge Chandlee Johnson Kuhn on July 11, 2011 but was followed by an Amended Notice (jointly signed by Judge Coppadge) on July 21, 2011 (the "Amended Notice"). This Amended Notice addressed two instances of delay in the disposition of cases pending before Judge Coppadge and the subsequent failure to include those cases on the so-called "90 day report" required by Directive 175 issued by the Chief Justice effective July 1, 2010.

Directive 175 requires the presiding Judge of each of the Delaware courts to submit monthly reports to the Chief Justice regarding matters held under advisement beyond specified time limits. With respect to the Family Court, the Directive requires the Chief Judge to "furnish to the Chief Justice on the tenth day of each month, a detailed report of each matter held under advisement for more than 90 days as of the last business day of the previous month

by each Judge [of the court]." Directive No. 175 § B.

Directive 175 also imposes on the individual judge a specific reporting requirement. Section E of Directive 175 ("Section E") requires "[e]ach ... Judge" to provide to her presiding judge the information necessary for the submission of "an accurate and timely report" to the Chief Justice. Failure of a judge to do so for "two consecutive months" results in mandatory referral to the Court on the Judiciary:

> E. Each ... Judge shall furnish the information necessary to the presiding judge of the court involved so an accurate and timely report can be prepared. *Failure to do so for two consecutive months shall cause the presiding judge to file a notice with the Clerk of the Court on the Judiciary. The notice shall be processed as a complaint under Court on the Judiciary Rule 5.*
>
> Directive 175 § E (emphasis supplied).

Chief Judge Kuhn's initial notice of a violation of Directive 175 was prompted by a contact from a litigant in a case entitled [*Smith v. Kane*] who complained about the failure of Judge Coppadge to render a decision in a matter heard approximately ninth months previously. Upon further inquiry by Chief Judge Kuhn, it was determined that the delay in the [*Smith*] matter should have been reported in Judge Coppadge's 90–day report for each month from December 2010 to May 2011. Judge Coppadge issued a belated decision in the [*Smith*] matter on June 27, 2011.

---

11. Del. Ct. Jud. R. 15(b)(2).

12. Where the report discussed specific Family Court cases, the Court replaced the case names with pseudonyms and omitted the case numbers. Del.Supr. Ct. R. 7(d).

The second case reflected in the Amended Notice [*Bailey v. Taylor* ] was discovered through a review by Chief Judge Kuhn's office. This case had remained open since November 5, 2010 and failed to appear for approximately four months beyond the required reporting date. After the Amended Notice was referred to a [Panel of the] Preliminary Investigatory Committee ... six additional cases were unearthed as a result of a further review by Judge Coppadge of her docket. These six cases were forwarded to [the Panel] on August 18, 2011 as a supplement to the Amended Notice.

The additional six cases, with pertinent hearing and required reporting dates are as follows:

[*Fulton v. Robinson* ]

(Hearing: January 13, 2011. Decision: June 29, 2011. Omitted from April and May 2011 90–day reports.)

[*Gibson–Stevens v. Owens–Roberts* ]

(Hearing: August 16, 2010. Decision: June 29, 2011. Omitted from November, December 2010 and January–May 2011 90–day reports.)

[*Martin v. Martin (Sawyer)* ]

(Hearing: September 7, 2010. Decision: July 6, 2011. Omitted from December 2010 and January–June 2011 90–day reports.)

[*Green v. Stanford* ]

(Hearing: December 8, 2010. Decision: June 29, 2011. Omitted from March, April and May 2011 90–day reports.)

[*Reed v. Williams* ]

(Hearing: August 17, 2010. Decision: July 7, 2011. Omitted from November, December 2010 and January–June 2011 90–day reports.)

[*Clark v. Palmer* ]

(Hearing: May 19, 2010. Decision: October 29, 2010. Omitted from August and September [2010] 90–day reports.)

Although not directly an instance of reportable misconduct in this proceeding, Judge Coppadge was involved in a matter which came to the attention of the Delaware Supreme Court in early 2010. In *Clark v. Clark*, the Supreme Court noted that an issue in the underlying matter on appeal from the Family Court had not been decided "for over two and one-half years." 2010 WL 876935, at *1 (Del. March 9, 2010) (Order). The Court described the delay as "extraordinary" and "[f]ortunately ... unusual." The Court directed that upon remand, the matter be assigned to a different judge of the Family Court, for a determination of whether the delay had resulted in financial harm to the litigants. It was eventually determined that no such financial harm existed. Judge Coppadge was the original trial judge in this matter. The delay in the *Clark* matter was the subject of a discussion between Chief Judge Kuhn and Judge Coppadge and the need for Judge Coppadge to "stay on top" of her cases.

At the hearing before the Board, Judge Coppadge did not dispute that delays had occurred in the cases above discussed nor did she include these matters in her 90–day reports. While accepting ultimate responsibility and expressing remorse for the resulting delay, she attributed failure to comply with the Directive to her assistant who was charged with tracking Judge Coppadge's cases and reporting delinquent dispositions. Judge Coppadge claimed that the "system" broke down when her assistant began to take night classes at Delaware Technical and Community College in January 2010 and discontinued her

tracking and reporting duties. The delay in the *Clark* matter, however, had already occurred before Judge Coppadge's assistant began her night classes.

At the hearing before the Board, the Presenter arranged for the testimony of an expert witness on the questions of whether the delays in the eight cases under review was unreasonable and whether harm to the litigants resulted from such delays. Gerald I.H. Street, Esquire has practiced exclusively in Family Court in all three counties for more than twenty-five years handling a broad range of family law cases. After review of the eight matters at issue in this proceeding, Mr. Street opined that there were unreasonable delays in six of the cases. He was of the further view that in two of the six delayed matters a litigant suffered direct injury. In one case (*Stevens v. Owens–Roberts*), a ten month post-hearing delay denied a father visitation rights. In another matter, *Reed v. Williams,* an effort by a wife to rescind a separation agreement was significantly delayed. The wife, who testified at the hearing by a teleconference call, claimed that as a result of the delay she was deprived of funds needed to acquire property in another state.

In her testimony before the Board, Judge Coppadge acknowledged the failure of her "tracking system" to prevent delay in a series of cases extending over a long period of time. Although she blamed her assistant for the failure to alert her to the continuing problem she acknowledged that the ultimate responsibility is upon the judge, not the judge's staff, to comply with the reporting requirements. Judge Coppadge believes that she has instituted sufficient changes in her tracking procedures to prevent

further violations and apparently she is in full compliance at this time.

Chief Judge Kuhn testified before the Board and explained the background of the delays here under consideration and the efforts she has undertaken through staff support to prevent a recurrence of the problem. Chief Judge Kuhn was also supportive of Judge Coppadge's overall effectiveness as a Family Court judge. She described her as "one of the most valued judges in New Castle County," diligent hard-working and "respected by everyone." Apart from the present proceeding, Judge Coppadge has not been the subject of any disciplinary action.

## *CONCLUSIONS OF LAW*

The Delaware Constitution provides that a judicial officer "may be censured or removed ... for wilful misconduct in office, wilful and persistent failure to perform his or her duties ... or other persistent misconduct in violation of the Canons of Judicial Ethics." Del. Const. Art. IV, § 37. Judge Coppadge is charged with violations of Rule 2.5(C) of the Delaware Judges' Code of Judicial Conduct which enjoins a judge to "dispose promptly of the business of the court." The rationale for the rule is reflected in the comment to the Rule noting that a judge must have "due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay." The comment further requires the judge "to monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays and unnecessary costs." Comment Rule 2.5(C).

Apart from the general admonitions in the Canons of Judicial Ethics, Judge Coppadge was required to comply with the specific reporting provisions of Di-

rective 175. These reporting requirements were mandatory and failure to comply for two consecutive months required the presiding judge of each respective court to file a notice which would be processed as a complaint before the Court on the Judiciary. But the focus of the rule is not merely punitive. In the absence of compliance with the reporting requirement by the individual judge, the presiding or Chief Judge of a particular court is without knowledge of the delay and unable to take the necessary steps to require a disposition and prevent a recurrence.

To be sanctionable under the Delaware Constitution a judge's conduct must be "wilful and persistent" in the failure to perform judicial duties. The action, or inaction, includes "the improper or wrongful use of the power of office by a judge acting intentionally, knowingly, voluntarily, or with gross unconcern for [her] conduct, which would bring the judicial office into disrepute. It is more than a mere error of judgment or an act of negligence." *In re Barrett*, 593 A.2d 529, 533 (Del.Jud.1991) quoting *In re Rowe*, 566 A.2d 1001, 1006 (Del.Jud. 1989). "Other persistent misconduct" may include conduct that is negligent where there is evidence of a "deliberate and persistent pattern." *In re Williams*, 701 A.2d 825, 832 (Del.Ct.Jud. 1997).

Judge Coppadge concedes that there is clear and convincing evidence that there were unreasonable delays in six of the eight matters presented. She also concedes that she failed to comply with the reporting requirement of Directive 175. Judge Coppadge suggests that the reporting deficiencies were the fault of "her office," *i.e.* her secretary or assistant. But the ultimate responsibility for the timely disposition of cases and compliance with reporting standards is not a delegable duty. The Delaware Supreme Court has consistently held lawyers ethically responsible for the proper supervision of lay persons in the employment of a lawyer. Judges should not be held to a lesser standard. [In *In re Otlowski*, 976 A.2d 172 (Del.2009), the Delaware Supreme Court imposed a public reprimand on a lawyer for a violation of Rule 5.3 of the Delaware Rules of Professional Conduct for failing to have reasonable safeguards in place to assure accurate accounting and failure to supervise an employee whose conduct resulted in theft of clients' funds.]

While the Presenter and counsel for Judge Coppadge disagree concerning the extent Judge Coppadge's conduct resulted in harm to litigants, it is unnecessary to quantify litigant harm on an individual basis. Family Court litigation is emotionally laden by its very nature. Any unnecessary delay increases the uncertainty and anxiety in cases of a personal nature involving visitation, custody, support and property division. More importantly, unnecessary delay harms the public image and society's confidence in the functioning of the judicial system. Here, Judge Coppadge's persistent conduct inflicted harm at both levels.

## SANCTIONS

The question of sanctions in this case is troublesome. The evidence is clear and convincing that Judge Coppadge engaged in a persistent pattern of delay in the disposition of cases pending before her over a period of many months. Equally clear is her failure to comply with the reporting mandates of Directive 175. But there is little doubt that Judge Coppadge is a diligent Family Court judge who disposes of a large caseload and, in the opinion of her Chief

Judge, is a valued member of the Court. Moreover, Judge Coppadge, with the assistance of support personnel has apparently implemented procedures to prevent a recurrence of the deficiencies disclosed in the proceedings.

There is no helpful Delaware precedent suggesting an appropriate sanction for delay by a judge in the processing and reporting demonstrated in this case. Cases from other jurisdictions, cited by the Presenter, are of limited assistance because of the differing judicial disciplinary systems or the types of delay involved, but in an analogous setting the Supreme Court of Kansas stressed the responsibility of a judge to prevent delay. *In the Matter of the Inquiry Relating to Janice P. Long, District Judge,* 224 [244] Kan. 719, 772 P.2d 814 (Kan. Supr.1989) the Court imposed a public censure for persistent delay in decision-making and noncompliance with reporting requirements. In noting the ultimate responsibility of the judge, the Court commented:

> Judges must at all times respect and comply with the laws and rules governing their conduct and the operation of the court in a matter which promotes public confidence in the integrity, impartiality, and administration of justice. Public confidence in the judiciary is eroded by a judge's improper or irresponsible conduct. We recognize that the trial judges of this state are dependent upon a number of different individuals to perform many of the services essential to the orderly operation of the courts. However, whatever the proficiency of the various members of the court staff, the judge is solely responsible for the

proper operation of the court. 224 [244] Kan. at 724-25 [772 P.2d 814].

Presenter has urged the imposition of a public sanction or censure to act as a deterrence to sanction[able] misconduct. Given the general reputation of the Delaware judiciary for diligence in the processing of cases, it is unlikely that deterrence would serve any purpose. Nonetheless, public confidence in the efficient functioning of the court system would be served by a ruling that persistent dilatory conduct by a judge, as presented here, should not be tolerated. Accordingly, the Board recommends that Judge Coppadge be publicly censured for her conduct.

### De novo Review of Board's Report

 A final report of a Board of Examining Officer has the force and effect of a master's report in the Court of Chancery.[13] "This Court is obligated to conduct its own evaluation of the evidence adduced by the Board and reach an independent conclusion as to the sanctions to be imposed."[14] The ultimate responsibility to censure, remove or retire any judicial officer appointed by the Governor is entrusted to this Court.[15]

### Board's Report Upheld

██ Having independently reviewed the record, including the transcript of the evidentiary hearing, we uphold the Board's factual findings and conclusions of law. The evidence is clear and convincing that Judge Coppadge, over a period of many months, engaged in a persistent pattern of delay in the disposition of cases pending before her and persistently failed to comply with the reporting mandates of Di-

**13.** *In re Rowe,* 566 A.2d 1001, 1005 (Del.Jud. 1989).

**14.** *Id.* at 1006.

**15.** Del. Const. art. IV, § 37.

rective 175. Judge Coppadge's persistent violation of Rule 2.5(C) of the Delaware Judges' Code of Judicial Conduct warrants the imposition of discipline.

### The Appropriate Sanction

The record reflects that Judge Coppadge has acknowledged the misconduct disclosed in this proceeding, has committed to remedial steps and has implemented procedures to prevent a recurrence. Furthermore, Judge Coppadge has not been the subject of any prior discipline and was supported in this proceeding by her Chief Judge, who described her as "one of the most valued judges in New Castle County." For these reasons, and after careful consideration of the circumstances of this case, we adopt the Board's recommended sanction of public censure. The publication of this Opinion will constitute the public censure imposed by the Court.[16]

---

**16.** Judge Coppadge has waived the confidentiality which otherwise attaches to a censure by not objecting to the Board's recommendation of a public censure.