**In the Matter of The Honorable William J. HOPKINS, Jr., a Judicial Officer.**

Delaware Court on the Judiciary.

Submitted Sept. 27, 1989.
Decided Nov. 16, 1989.

James E. Liguori, Hudson, Jones, Jaywork, Williams & Liguori, Dover, for respondent.

Charles P. Brandt, Brandt and Dalton, P.A., Wilmington, assigned as presenter.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH, and HOLLAND, JJ., ALLEN, Chancellor, and STIFTEL, President Judge.

1. The Delaware Judges' Code of Judicial Conduct, Canon 3 A(3) states:

> (3) A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control.

2. Delaware Constitution, Article IV, § 37 states:

> § 37. *Court on the Judiciary.*
>
> Section 37. A Court on the Judiciary is hereby created consisting of the Chief Justice and the Associate Justices of the Supreme Court, the Chancellor, and the President Judge of the Superior Court.
>
> Any judicial officer appointed by the Governor may be censured or removed or retired by the Court on the Judiciary as herein provided.
>
> A judicial officer may be censured or removed by virtue of this section for wilful misconduct in office, wilful and persistent failure to perform his duties, the commission after appointment of an offense involving moral turpitude, or other persistent misconduct in violation of the Canons of Judicial Ethics as adopted by the Delaware Supreme Court from time to time.
>
> A judicial officer may be retired by virtue of this section for permanent mental or physical disability interfering with the proper performance of the duties of his office.
>
> No judicial officer shall be censured or removed or retired under this section unless he has been served with a written statement of the charges against him, or of the grounds of his retirement, and shall have had an opportunity

CHRISTIE, Chief Justice:

A written complaint against Judge William J. Hopkins, Jr. was filed on February 16, 1989, by the Acting Administrator of the Justice of the Peace Courts alleging that Judge Hopkins was guilty of wilful misconduct in connection with a violation by him of the Delaware Judges' Code of Judicial Conduct, Canon 3 A(3).[1] The Court on the Judiciary, acting pursuant to the provisions of art. IV, § 37 of the Delaware Constitution[2] and Court on the Judiciary Rule 3(b)(1), directed a Preliminary Investigatory Committee (the "Committee") to investigate the complaint. In its report, the Committee found that there was probable cause to believe that Judge Hopkins was subject to censure, suspension, removal, or retirement and recommended a severe reprimand of Judge Hopkins by this Court. The Court on the Judiciary then appointed Judge Henry duPont Ridgely as the Board

> to be heard in accordance with due process of law. The affirmative concurrence of not less than two-thirds of the members of the Court on the Judiciary shall be necessary for the censure or removal or retirement of a judicial officer. The Court on the Judiciary shall be convened for appropriate action upon the order of the Chief Justice, or upon the order of any other three members of the Court on the Judiciary. All hearings and other proceedings of the Court on the Judiciary shall be private, and all records except a final order of removal or retirement shall be confidential, unless the judicial officer involved shall otherwise request.
>
> Upon an order of removal, the judicial officer shall thereby be removed from office, all of his authority, rights and privileges as a judicial officer shall cease from the date of the order, and a vacancy shall be deemed to exist as of that date. Upon an order of retirement, the judicial officer shall thereby be retired with such rights and privileges as may be provided by law for the disability retirement of a judicial officer, and a vacancy shall be deemed to exist as of the date of retirement.
>
> In the absence of disqualification of a member of the Court on the Judiciary, the Chief Justice, or in his absence or disqualification the Senior Associate Justice, shall appoint a substitute member *pro tempore.*
>
> The Court on the Judiciary shall have:
>
> (a) the power to summon witnesses to appear and testify under oath and to compel the production of books, papers and documents, and
>
> (b) the power to adopt rules establishing procedures for the investigation and trial of a judicial officer hereunder.

of Examining Officer (the "Board") to hold a hearing on the charges and to render a report. Ct.Jud.R. 5–8. In the Board's final report, it concluded that Judge Hopkins' actions were the result of errors in judgment. The Board, acting on the theory that wilful misconduct required a showing of bad faith, concluded that wilful misconduct had not been proven by clear and convincing evidence. As a result, it recommended that no further disciplinary action be taken against Judge Hopkins.

The Court on the Judiciary, acting *sua sponte* pursuant to Ct.Jud.R. 9(b), ordered further proceedings before the entire Court and appointed Charles P. Brandt, Esquire, to present the case to the Court, under a rule to show cause why the recommendation of the Board of Examining Officer should be rejected. Ct.Jud.R. 9(c)(1). Oral arguments by counsel for the respondent and the presenter were heard. The Court, having reviewed the entire record, now holds that: a) bad faith is not a necessary element of wilful misconduct, b) Judge William J. Hopkins, Jr. was guilty of wilful misconduct as that term is used in the Delaware Constitution, and c) Judge Hopkins is to be censured and suspended from his duties as Justice of the Peace for a period of one month.

## I.

This case stems from an incident which occurred on January 27, 1989. On that date, William R. Davis was stopped by the Seaford police and charged with driving an unsafe vehicle and driving while his license was revoked. The Seaford police brought Davis to Justice of the Peace Court No. 4 where he was arraigned before Judge Hopkins. Davis pled not guilty to both charges. He was ordered to post a secured bond of $2,000 or a ten percent cash bond on the charge of driving while his license was revoked and to sign his own recognizance for the unsafe vehicle charge. While at Court No. 4, Davis was informed that an outstanding warrant from Harrington (which was within the jurisdiction of Justice of the Peace Court No. 6) had been discovered in a routine computer check. Davis insisted to Judge Hopkins that the

charge in Court No. 6 had been dismissed and that he did not owe the $37.25 fine which would have resulted from a conviction on that charge. At that point, Judge Hopkins allowed Davis to go out to the hall to use the phone in order to try to raise the money for his $2,000 bond. It had become apparent that he had only two twenty dollar bills with him in his jacket pocket.

Davis later informed the court clerk that he was unable to raise the bond money by phone calls, and he also indicated that he refused to pay the fine said to be due at Court No. 6. Judge Hopkins then ordered Davis and the arresting officer back into the courtroom. Judge Hopkins asked that Davis pay the $37.25 due to Court No. 6. When he refused, Judge Hopkins ordered the police officer to take the money from him. At that point, the officer used some force to extract $40.00 in cash from Davis' pocket. Accounts of exactly how much force was used differ, but another justice of the peace stated that he entered the courtroom when he heard loud noises and observed the officer holding Davis by the neck with one of his arms pressed against the table. After placing Davis in handcuffs, the officer delivered the money to the court clerk. The clerk in turn deducted $37.25 from the $40 and returned the change and a receipt to Davis. Davis was then transported to jail in default of the $2,000 bond set on the pending charge in Court No. 4.

The clerk of Court No. 4 sent a mail-in disposition slip to Court No. 6 on January 31, 1989. Thereafter, a representative from the Harrington Police Department appeared at Court No. 6 with the original ticket and requested that the charge be dismissed. A clerk of Court No. 6 related that she was aware that Davis had repeatedly tried to straighten out this ticket in 1988, but a judge had not been available and the police had misplaced the original of the ticket. According to the clerk, the Harrington police intended to have the charge dismissed but had never done so. Consequently, the charge was still listed in the computer as outstanding. On February 3, 1989, Court No. 6 issued a check to Davis for $37.25, describing it as an overpayment.

## II.

The reports of the Preliminary Investigatory Committee and the Board of Examining Officer have "the force and effect of a master's report in Chancery." Ct.Jud.R. 9(a). Therefore, this Court is obligated to conduct its own evaluation of the evidence adduced by the Committee and the Board and reach an independent conclusion as to the sanction imposed. *In the Matter of Rowe*, Del.Jud., 566 A.2d 1001 (1989). We agree with the Preliminary Investigatory Committee that there is evidence tending to show that Judge Hopkins violated art. IV, § 37 of the Delaware Constitution. We do not agree with the Board of Examining Officer that the conduct of Judge Hopkins fails to show wilful misconduct on his part by clear and convincing evidence.

The standard of proof required for this Court to take action is clear and convincing proof. Ct.Jud.R. 7(f). This standard mandates more than a preponderance of evidence, but less than that required by a reasonable doubt standard. *Rowe*, 566 A.2d at 1006. We hold that the evidence indicates that Judge Hopkins' actions constituted misconduct in office and amounted to wilful misconduct.

Judge Hopkins has not denied that he gave the instructions to the police officer on January 27, 1989 to collect the money. He ordered the arrestee to pay a fine which the judge thought Davis owed in another court. When Davis protested and refused to pay, Judge Hopkins used his authority to order a police officer to seize the arrestee and use the force necessary to remove money from his person. Judge Hopkins' conduct was not authorized by the written instructions applying in such cases, and it was in violation of Canon 3 A(3) of the Delaware Judges' Code of Judicial Conduct. We rule that under the circumstances, it constituted "wilful misconduct" within the meaning of art. IV, § 37 of the Delaware Constitution. There being no credible evidence to the contrary, the wilful misconduct is deemed to be proven by clear and convincing evidence.

The evidence to show that Judge Hopkins' actions were "wilful" within the meaning of the Delaware Constitution as it has been construed is clear. *See Rowe*, 566 A.2d at 1008. Judge Hopkins has not denied that he knew that there was a procedure established in the Justice of the Peace Courts for handling outstanding warrants from another Justice of the Peace Court. He testified that he explained this procedure to Davis and that Davis initially offered to post $40.00 as a bond for appearance in Court No. 6. He also testified that when Davis apparently changed his mind and refused to pay any money to the court clerk, he articulated another policy by which he could have the money forcibly taken from Davis. However, there is no such policy, nor can the existing procedure be understood to include any such policy.

Judge Hopkins has asserted two arguments to indicate that his actions were based merely on a mistaken view of his authority under these circumstances. His first argument is that the procedure for warrants did not apply to the information which was generated by the computer search on Davis. The computer merely showed that there was an unpaid ticket in another court. This was verified by a phone call made by the arresting officer to the Harrington Police Department and further verification by the court clerk. However, Judge Hopkins testified that he relied on this information as he would if it were a warrant. His reliance on the regular procedure for warrants tends to refute his later argument that the policy as to warrants did not apply where the court was acting on information contained in a computer printout.

The second argument is that Judge Hopkins honestly believed that he had the authority to have the money seized from Davis. He has conceded that his belief was a mistake, but argues that the mistake was made in good faith. He explained that during the early part of his 23–year tenure as a judge, he overheard a remark made by the then Chief Justice of Delaware to the effect that a judge could use force to collect a fine from a defendant who had the money on his person but who refused to

pay it. Testimony showed that Judge Hopkins had passed this notion on to at least three other justices of the peace whom he had trained prior to the issuance of Policy Directive 83–080. However, at the time of the incident in question, the clear written policy on the handling of fines due to another court had been in effect for six years.[3] No judge who testified indicated that he had ever taken action under the contradictory policy, and Judge Hopkins had never before ordered anyone to use force to collect a fine under any circumstances. Moreover, the comment on which Judge Hopkins said he relied did not in any way indicate that one court has authority to actually collect fines due in another court. Under the circumstances the argument based on an offhand remark attributed to a deceased Chief Justice is not an adequate explanation or excuse for the unauthorized action taken by Judge Hopkins.

The evidence shows that Davis did not have to pay a fine due in Court No. 6 to Court No. 4, and Judge Hopkins knew this. Davis did not display a violent attitude nor was it necessary to restrain him by force in connection with his detention on charges properly pending in Court No. 4. Davis was taken to jail because he was unable to raise the bond for the charge on which he was arrested. If he had been ordered to post bond for Court No. 6 and he had failed to do so, he might properly have been sent to jail pending a resolution of the matter. Existing court procedure policies covered the situation at hand, but did not authorize the extraordinary seizure. There was no convincing evidence to show that Judge Hopkins was not aware of the procedures he should have followed. Apparently, he had followed those procedures consistently

for years. His action, therefore, displayed what is deemed to be an intentional violation of written policies or procedure. He acted without due concern for the implications to the public, the police officer involved, and the judiciary as a whole. It is appropriate that his actions be deemed to be "wilful misconduct" in office.

We rule that Judge Hopkins' actions on January 27, 1989, amounted to "wilful misconduct in office" as prohibited by art. IV, § 37 of the Delaware Constitution. Wilful misconduct includes "the improper or wrongful use of the power of his/her office by a judge acting intentionally, knowingly, voluntarily, or with gross unconcern for his conduct, which would bring the judicial office into disrepute." *Rowe*, 566 A.2d at 1006.

Judge Hopkins has served as a justice of the peace for 23 years. Although not trained as a lawyer, he has been an active and diligent judicial officer. He has worked with the legislature to increase efficiency and quality of service within the Justice of the Peace Court system. As the judge in a court of first appearance, he has had to deal with citizens who sometimes are belligerent and unruly. Generally, he has brought dignity and respect to his office. Nevertheless, the evidence shows that while Judge Hopkins described his actions as stemming from an error based on an incorrect understanding of his authority, his actions appear to have been colored by an attitude indicating that he could ignore well-established court procedures.

### III.

It is therefore ordered that effective November 20, 1989, Judge Hopkins is sus-

---

**3.** Collection from an arrestee of a fine levied by another court is not an established procedure for the handling of outstanding warrants. On August 26, 1983, the Chief Magistrate of the Justice of the Peace Courts issued Policy Directive 83–080, which set forth the procedure which a court should follow in a situation such as this one. The directive states:

 A. With regard to *warrants*, the Court should conduct a normal initial appearance proceeding. Bail should be set and the case transferred to the appropriate Court. Copies of the resulting paperwork should be forwarded to

the Court which issued the warrant and, where appropriate, the Court to which the case is being transferred.

 Under the established procedure, the authority of a Justice of the Peace Court is limited to setting a bond for appearance in the Court which had issued the warrant. One Justice of the Peace Court is not authorized to collect fines for a different Justice of the Peace Court, or to adjudicate the arrestee's case in any way. Under no circumstances is a Justice of the Peace authorized to instruct a police officer to use force to extract a fine.

pended without compensation from office for a period of one month.[4] The publication of this opinion will constitute a censure.[5]

ORDER

This 16th day of November, 1989, it appears that:

(1) Judge William J. Hopkins, Jr., while serving as a judge of Justice of the Peace Court No. 6 in Sussex County for the State of Delaware, ordered a police officer to use force to remove money from an arrestee in order to pay a fine believed to be due in another Justice of the Peace Court.

(2) This action was in direct conflict with an existing directive governing the procedures in the Justice of the Peace Courts and Canon 3 A(3) of the Delaware Judges' Code of Judicial Conduct (the "Code").

(3) Pursuant to Rule 3 of the Rules of Procedure of the Court on the Judiciary, a Preliminary Investigatory Committee found probable cause that Judge Hopkins may have violated the Code and may have engaged in wilful misconduct in office as proscribed by art. IV, § 37 of the Delaware Constitution.

(4) Pursuant to Ct.Jud.R. 5, a Board of Examining Officer was appointed. The Board heard testimony, took evidence, and concluded that Judge Hopkins' actions were errors in judgment and did not constitute wilful misconduct in office. The Board recommended no further disciplinary action.

(5) This Court, *sua sponte*, ordered further proceedings before the entire Court. Ct.Jud.R. 9(b). After reviewing the record and hearing arguments in open court, this Court found that Judge Hopkins had violated Canon 3 A(3) of the Code and that under the circumstances the violations constituted wilful misconduct in office. The violations were found to be intentional, voluntary, and carried out with knowledge of existing procedures in Justice of the Peace Courts

and without a proper concern for the provisions of the Code. *See In the Matter of Rowe*, Del.Jud., 566 A.2d 1001 (1989). This Court has issued an opinion to this effect pursuant to Ct.Jud.R. 9(c)(5).

NOW, THEREFORE, IT IS ORDERED that:

(a) Effective November 20, 1989, and for a period of one calendar month thereafter, Judge Hopkins is suspended without compensation from office.

(b) A certified copy of this order shall be transmitted to the Governor, the State Treasurer, and to the Administrator of the Justice of the Peace Courts pursuant to Ct.Jud.R. 9(c)(6).

---

**4.** While the Constitution does not specifically list a suspension as one of the authorized sanctions available to this Court, the Rules of the Court on the Judiciary do so provide, and we have ruled that the Court has constitutional authority to impose such sanction. *See Rowe*, 566 A.2d at 1009.

**5.** Judge Hopkins has waived the confidentiality which otherwise attaches to a censure under Ct.Jud.R. 10(d).