**In the Matter of the Honorable Margaret L. BARRETT, a Judicial Officer.**

Delaware Court on the Judiciary.

Submitted: May 20, 1991.
Decided: June 6, 1991.

Joseph A. Hurley, Wilmington, for respondent.

Richard Allen Paul, E.I. duPont de Nemours & Co., Inc., Wilmington, assigned as presenter.

Before CHRISTIE, C.J., HORSEY, MOORE, WALSH and HOLLAND, JJ., and ALLEN, Chancellor, and BIFFERATO, Judge (sitting by designation pursuant to Del. Const. art. IV, § 37) constituting the Court on the Judiciary.

**CHRISTIE, Chief Justice:**

The Chief Magistrate instituted this proceeding in the Court on the Judiciary on August 15, 1990, pursuant to art. IV, § 37 of the Delaware Constitution[1] and the Rules of Procedure of the Court on the Judiciary ("Rules") in which he alleged that the respondent, Margaret L. Barrett, has engaged in various acts of judicial misconduct. The Preliminary Investigatory Committee ("Committee") of the Court filed a report on October 17, 1990 which contained a finding of probable cause that Judge Barrett may have violated the Canons of the Delaware Judges' Code of Judicial Conduct ("Code") and engaged in wilful misconduct in violation of the Delaware Constitution. The Court then appointed a Board of Examining Officer ("Board"). The Board issued its report on April 11, 1991 and found that Judge Barrett had violated Canons 1, 2(A), 3(B)(1), 3(B)(2), and 7(A)(3)

1. Del. Const. art. IV, § 37 states:

§ 37. *Court on the Judiciary.*

Section 37. A Court on the Judiciary is hereby created consisting of the Chief Justice and the Associate Justices of the Supreme Court, the Chancellor, and the President Judge of the Superior Court.

Any judicial officer appointed by the Governor may be censured or removed or retired by the Court on the Judiciary as herein provided.

A judicial officer may be censured or removed by virtue of this section for wilful misconduct in office, wilful and persistent failure to perform his duties, the commission after appointment of an offense involving moral turpitude, or other persistent misconduct in violation of the Canons of Judicial Ethics as adopted by the Delaware Supreme Court from time to time.

A judicial officer may be retired by virtue of this section for permanent mental or physical disability interfering with the proper performance of the duties of his office.

No judicial officer shall be censured or removed or retired under this section unless he has been served with a written statement of the charges against him, or of the grounds of his retirement, and shall have had an opportunity to be heard in accordance with due process of law. The affirmative concurrence of not less than two-thirds of the members of the Court on the Judiciary shall be necessary for the censure or removal or retirement of a judicial officer. The Court on the Judiciary shall be convened

for appropriate action upon the order of the Chief Justice, or upon the order of any other three members of the Court on the Judiciary. All hearings and other proceedings of the Court on the Judiciary shall be private, and all records except a final order of removal or retirement shall be confidential, unless the judicial officer involved shall otherwise request.

Upon an order of removal, the judicial officer shall thereby be removed from office, all of his authority, rights and privileges as a judicial officer shall cease from the date of the order, and a vacancy shall be deemed to exist as of that date. Upon an order of retirement, the judicial officer shall thereby be retired with such rights and privileges as may be provided by law for the disability retirement of a judicial officer, and a vacancy shall be deemed to exist as of the date of retirement.

In the absence of disqualification of a member of the Court on the Judiciary, the Chief Justice, or in his absence or disqualification the Senior Associate Justice, shall appoint a substitute member *pro tempore.*

The Court on the Judiciary shall have:

(a) the power to summon witnesses to appear and testify under oath and to compel the production of books, papers and documents, and

(b) the power to adopt rules establishing procedures for the investigation and trial of a judicial officer hereunder.

of the Code [2] and that some of her actions constituted wilful misconduct under the Delaware Constitution. The Board recommended that Judge Barrett be suspended from office for a period of six months and that she be publicly censured.

Judge Barrett filed exceptions to the Board's report on April 15, 1991. The Court on the Judiciary ordered further proceedings before the entire Court. The matter was heard upon oral argument on May 20, 1991.

After consideration of the arguments and evidence presented in this case, we uphold the report of the Board and find that some of Judge Barrett's actions constitute wilful misconduct in office. We adopt the Board's recommendation of suspension for six months and public censure as the appropriate sanctions for the instances of judicial misconduct found to have been committed.

### I.

Based upon the evidence presented at a hearing on February 19, 1991 and on the parties' post-hearing memoranda and supplement, the Board, made the following findings of fact concerning the various allegations against Judge Barrett.

Margaret Barrett has been a Justice of the Peace for the State of Delaware since June 19, 1982, presiding in Kent County. At the time of her appointment she was a widow with four daughters ranging from eight to twenty years of age.

Prior to her appointment, Judge Barrett was employed as a title searcher operating under the business name of Alpha Services. In addition, she from time to time taught a paralegal real estate course at both Wesley College and Delaware Technical and Community College. Judge Barrett terminated her association with the business upon her confirmation. Also prior to her appointment as a Justice of the Peace, Judge Barrett held the position of Mortgage Commissioner for Kent County. Because the Mortgage Commissioner position is ministerial and posed no conflict of interest with the duties of a Justice of the Peace, Judge Barrett continued to hold the position during her tenure as a Justice of the Peace. In February, 1990 she resigned as Mortgage Commissioner. No conflict arose between her duties in the two positions.[3]

**2.** The Delaware Judges' Code of Judicial Conduct provides in part:

Canon 1. *A Judge Should Uphold the Integrity and Independence of the Judiciary*

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

Canon 2. *A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities*

A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

Canon 3. *A Judge Should Perform the Duties of His Office Impartially and Diligently*

The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties the following standards apply:

\* \* \* \* \* \*

B. Administrative Responsibilities.

(1) A judge should diligently discharge his administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

(2) A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.

Canon 7. *A Judge Should Refrain from Political Activity Inappropriate to His Judicial Office*

A. A judge should not:

\* \* \* \* \* \*

(3) Solicit funds for or pay an assessment or make a contribution to a political organization or candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions;

**3.** The original complaint against Judge Barrett alleged that she continued to receive income from Alpha Services after terminating her employment with the firm. The record does not show that she received any improper payments. The original complaint also alleged that Judge Barrett's dual appointments as Justice of the Peace and Mortgage Commissioner constituted conflict of interest. At the time of her initial appointment to the court, the issue of potential conflict of interest was addressed by both Democrat and Republican counsels to the State Sen-

After her appointment, the respondent performed six gratuitous title searches, three for police officers and three for Justice of the Peace Court personnel. The police officers had appeared before her both before and after the title searches were performed for them. Judge Barrett said that her motive in doing the gratuitous title searches was a desire to remain involved in a type of work which she enjoyed and which was the subject matter of a course she taught. Judge Barrett was particularly interested in doing searches for properties which had interesting or challenging histories. She did not feel that such services compromised her position as a Justice of the Peace when the police officers appeared in her court in later proceedings. The record does not show that any actual conflict arose as a result of the respondent having rendered gratuitous services to individuals who appeared before her in their professional capacity as police officers.

Subsequent to her appointment, Judge Barrett frequently gave tickets to political fund-raising events to Justice of the Peace Court personnel including other judicial officers. She received the tickets from her then-fiance who was a lobbyist for ConRail and CSX Railroads. Judge Barrett did not seek contributions in exchange for the tickets, but she attended "a lot of political functions" during the years 1982 through 1988. She was aware that the Delaware Judges' Code of Judicial Conduct prohibits attendance at such functions but considered enforcement of the rule to be lax in Kent County. Judge Barrett's disregard for the Code's prohibition against political activity may be attributed in part to a lack of training new personnel by the Justice of the Peace Court, but it is clear that she failed to abide by the requirements of the Code.

Between June 30, 1986 and January 14, 1991 the Deputy Chief Magistrate recorded that the respondent was tardy in reporting to work more than thirty times. One of the respondent's coworkers estimated that Judge Barrett is five to ten minutes late in starting her court shift a majority of the time. The respondent does not dispute the fact that she tends to be tardy. Her general practice is to call the court if she is going to be more than five or ten minutes late. A formal policy in the Justice of the Peace Court is that a judge must remain on duty until the judge on the following shift arrives. Lengthy delay in the arrival of one judge interferes with the ability of another judge to leave at the end of a shift. However, a judge may leave the court briefly uncovered if he knows the next judge is to arrive soon.

On November 17, 1986 Judge Barrett was presiding at Justice of the Peace Court No. 7 when the Dover police brought in a defendant on an outstanding capias for a traffic ticket. The matter was delayed beyond the end of Judge Barrett's shift while the State Police checked for other outstanding tickets. A police officer mentioned that the defendant had jewelry for sale. The defendant produced jewelry which was examined by court staff. Judge Barrett purchased some small items as did other court employees. Because the respondent's shift had ended, the defendant's case was handled by another judge. The Board did not determine whether the defendant knew that one of his customers was a judge. Nor did it determine whether the purchase was a legitimate arms-length transaction at a reasonable price or a bargain designed to win favor with a judge on duty. Nevertheless, the transaction of business with a defendant in a courthouse, during a court session, by court personnel was highly improper. The respondent, as a judicial officer, has the obligation to set an appropriate standard of behavior for other

---

ate. Neither found that the dual appointments constituted conflict of interest.

In addition, the original complaint alleged that Judge Barrett committed forgery by signing the name of another judge to a document in a court record. The Deputy Chief Magistrate investigated this incident soon after it occurred and directed Judge Barrett to correct the document.

The Board considered all three of these allegations and found that none of them constituted a violation of the Code of Judicial Conduct by Judge Barrett. We agree with the Board's conclusions.

court personnel. She failed to do so in this instance.

## II.

 The Court on the Judiciary was created by amendment of the Delaware Constitution on April 24, 1969.[4] Its role is to administer the Delaware Judges' Code of Judicial Conduct which governs the conduct of all judges of this State.[5] Its power includes the ability to censure or remove a judicial officer for "... wilful misconduct in office [or] wilful and persistent failure to perform [her] duties ... or other persistent misconduct in violation of the Canons of Judicial Ethics."[6] Because the final report of the Board of Examining Officers has the force and effect of a master's report in the Court of Chancery, Ct.Jud.R. 9(a), this Court is obliged to conduct its own evaluation of the evidence adduced by the Board and to reach its own conclusion as to any sanctions which may be appropriate in a case. *In the Matter of Rowe*, Del.Jud., 566 A.2d 1001, 1006 (1989); *In the Matter of Hopkins*, Del.Jud., 566 A.2d 1011, 1014 (1989). The standard of proof in cases before this Court is clear and convincing evidence. Ct.Jud.R. 7(f). This standard requires more than a preponderance of evidence, but less than that required by a reasonable doubt standard. *Rowe*, 566 A.2d at 1006; *Hopkins*, 566 A.2d at 1014. This Court has held that the term "wilful misconduct" as used in art. IV § 37 of the Delaware Constitution

> includes the improper or wrongful use of the power of [her] office by a judge acting intentionally, knowingly, voluntarily, or with gross unconcern for [her] conduct, which would bring the judicial office into disrepute. It is more than a mere error of judgment or an act of negligence.

*Rowe*, 566 A.2d at 1006. To find that a judicial officer has committed "wilful misconduct" in office does not require that we find bad faith as a necessary element. *Id.*

It is sufficient that we find that a judge's actions

> displayed what is deemed to be an intentional violation of written policies or procedure ... without due concern for the implications to the public ... and the judiciary as a whole.

*Hopkins*, 566 A.2d at 1015.

Under these standards, we agree with the Board that some of Judge Barrett's violations of the Code constituted wilful misconduct under art. IV, § 37 of the Delaware Constitution.

## III.

In her exceptions to the Board's findings and at oral argument Judge Barrett raised several points. She raised these points not so much as defenses to the charges against her, but rather as mitigating factors for our consideration in determining appropriate sanctions for this case.

 In regard to the gratuitous title searches the respondent claims that she had no monetary motive but merely sought to keep her skills current for the paralegal courses which she taught. She contends that there was no probability of interference with her judicial objectivity as a result of having performed these searches. We agree with the Board that in spite of Judge Barrett's innocuous motives for performing the searches, the rendering of gratuitous services for individuals who appeared before her in their professional capacity as police officers presented an appearance of impropriety in violation of Canons 1 and 2(A) of the Code.

 As to the respondent's attendance at political fund-raising functions and distribution of tickets for such functions to other court personnel, Judge Barrett contends that she made no solicitation of donations in return for the tickets and that it was common practice in Kent County for members of the judiciary, especially those whose spouses were politically active, to

---

**4.** 53 Del.Laws, C. 293. Del. Const. art. IV, § 37.

**5.** Order Amending Rule of the Supreme Court of Delaware, January 16, 1974 (Herrmann, C.J.; Carey, J; Duffy, J.). The Delaware Judges' Code of Judicial Conduct.

**6.** Del. Const. art. IV, § 37.

attend functions as guests. She also points out that her attendance at political events was always to accompany her fiance and that she stopped distributing tickets and attending political functions when the engagement was broken in 1988. The Board found and we agree that Judge Barrett's attendance at political fund-raising events was in direct violation of Canon 7(A)(3) and the violation was aggravated by the fact that it was not an isolated occurrence, but rather a pattern of activity which persisted for a number of years. Her conduct must be characterized as wilful since she was aware that the Code prohibited attendance at such functions. Even if we assume the respondent's two contentions that adherence to Canon 7(A)(3) in Kent County was lax during the early 1980s and that the Justice of the Peace Court failed to fully instruct new judges in all of the canons, we cannot excuse the respondent for her ongoing direct violation of a canon of judicial ethics.

■ Judge Barrett admits to a chronic problem of tardiness in initiating her court shifts. She seeks to have this problem excused because of her heavy family obligations as a widowed mother of four children. She also contends that she is not the only court employee with a tardiness problem. We do not find these excuses persuasive. The Deputy Chief Magistrate has warned her about being late for court shifts. Her chronic tardiness is an ongoing violation of Canon 3(B)(1), and it has a disruptive effect on the functioning of the Justice of the Peace Court because of the court's policy which keeps another judge on duty until her arrival. Her insensitivity to the schedules of others interferes with the routine performance of work, is an imposition on parties appearing in court, and, in time, must affect the morale of those who work with her. Part of the administrative

responsibility of a judge is to meet schedules. Part of the ethical responsibility of a judge according to Canon 3(B)(2) is to set a high standard of diligence for other court personnel. Through her chronic tardiness Judge Barrett has failed to fulfil both of these responsibilities. Her continued disregard for promptness following warnings from the Deputy Chief Magistrate constitutes wilful misconduct.

■ Judge Barrett acknowledges that making jewelry purchases from a defendant at the courthouse while court was in session was a lapse in good judgment and a violation of Canon 1. Allowing other court personnel to make purchases from the defendant at the same time was a supervisory error in violation of Canon 3(B)(2). The Board found this commercial transaction to have been an isolated incident constituting merely careless or negligent behavior. We agree that the incident was highly improper but does not rise to the level of wilful misconduct.

Following a careful examination and analysis of the evidence and after an evaluation of the findings of fact which are supported by clear and convincing evidence, we find that Judge Barrett, through persistence in attending political functions and in disregarding court scheduling, has engaged in wilful misconduct in office within the meaning of art. IV, § 37 of the Delaware Constitution. Disciplinary action is warranted.

### IV.

■ The power to suspend a judge is encompassed in this Court's authority to "censure, remove or retire" any judicial officer as granted by art. IV, § 37 of the Delaware Constitution. *Rowe*, 566 A.2d at 1009. Rule 9(c) of the Rules of Procedure of the Court on the Judiciary defines the process for suspension after a finding of misconduct or disability.[7]

---

7. Rule 9(c) states in part:
 (5) ... the Court shall file a written opinion and order ... censuring, suspending, removing or retiring the respondent under Article IV, § 37 of the Delaware Constitution. The affirmative concurrence of *not less than two-thirds of the members* of the Court shall be necessary for censure, suspension, removal or retirement.

 (6) A certified copy of an order of suspension, removal or retirement shall be transmitted forthwith by the Court to the Governor, the State Treasurer and any other official the Court may deem to be directly concerned.

We have found that Judge Barrett committed wilful misconduct in office through ongoing, direct violations of Canons 3(B)(1), 3(B)(2) and 7(A)(3) of the Code of Judicial Conduct by her frequent attendance at political functions and by her chronic tardiness. We have also found that her negligent behavior concerning gratuitous title searches and a commercial transaction during a court session violated Canons 1, 2(A) and 3(B)(2) of the Code. Finally, we have considered the mitigating factors and the testimonial letters which Judge Barrett presented to the Board. Taking all of these factors into account, we find that the sanctions recommended by the Board, a six month suspension and public censure, are appropriate. Therefore, effective June 10, 1991, Judge Barrett is suspended from office, without compensation, for a period of six calendar months. The publication of this opinion will constitute public censure.

### ORDER

This 6th day of June, 1991, it appears to the Court that:

(1) Judge Margaret L. Barrett is a judge of Justice of the Peace Court No. 7 in Kent County for the State of Delaware. She has served as a judge since June 19, 1982. During the years 1982 to 1986 Judge Barrett frequently attended political fund-raising events and distributed tickets to such functions to other Justice of the Peace Court personnel. Throughout her tenure as a Justice of the Peace, Judge Barrett has made a practice of being late for court sessions. Her tardiness has continued in spite of being warned by the Deputy Chief Magistrate that such behavior is unacceptable and disrupts the functioning of the Justice of the Peace Court.

(2) Judge Barrett's conduct has been in direct conflict with Canons 1, 2, 3, and 7 of the Delaware Judges' Code of Judicial Conduct.

(3) Pursuant to Rule 3 of the Rules of Procedure of the Court on the Judiciary, a Preliminary Investigatory Committee found probable cause that Judge Barrett may have violated the Code and may have engaged in wilful misconduct in office as proscribed by art. IV, § 37 of the Delaware Constitution.

(4) Pursuant to Ct.Jud.R. 5, a Board of Examining Officer was appointed. The Board heard testimony, took evidence, and concluded that Judge Barrett had violated Canons 1, 2, 3, and 7 of the Code. The Board found that the violations concerning political fund-raising events and tardiness in court duties were committed knowingly and intentionally over a period of time and constituted wilful misconduct in office as proscribed by art. IV, § 37 of the Delaware Constitution. The Board recommended a six month suspension from office and a public censure. Ct.Jud.R. 7 and 8.

(5) This Court has issued an opinion pursuant to Ct.Jud.R. 9(c)(5), upholding the Board's finding of wilful misconduct and accepting the recommendation of the Board as to the sanctions to be imposed.

NOW, THEREFORE, IT IS ORDERED that:

(a) Effective June 10, 1991 and for a period of six calendar months thereafter, Judge Barrett is suspended without compensation from office.

(b) A certified copy of this order shall be transmitted to the Governor, the State Treasurer, and to the Administrator of the Justice of the Peace Courts pursuant to Ct.Jud.R. 9(c)(6).