**In the Matter of The Honorable Leonard L. WILLIAMS, a Judicial Officer.**

**No. C.J. No. 3, 1996.**

Court on the Judiciary of Delaware.

Submitted: June 12, 1997.
Decided: Oct. 6, 1997.
Revised: Oct. 8, 1997.

Victor F. Battaglia, Sr., of Biggs & Battaglia, Wilmington, for Judicial Officer.

---

**8.** The Superior Court relied upon *Ewing,* which appears to be an isolated exception to the other holdings cited.

John A. Parkins, Jr., of Richards, Layton & Finger, Wilmington, Presenter.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT, and BERGER, JJ., RIDGELY, President Judge, and JACOBS, Vice Chancellor,[1] constituting the Court on the Judiciary.

PER CURIAM:

In this proceeding to discipline a member of the judiciary pursuant to the Delaware Constitution,[2] we find that the judicial officer has committed acts of persistent misconduct in violation of the Delaware Judges' Code of Judicial Conduct. Accordingly, we impose a sanction appropriate under all the circumstances.

The judicial officer in this proceeding is The Honorable Leonard L. Williams, a judge of the Municipal Court of the City of Wilmington. Judge Williams presently occupies a unique status. He is a part-time judge and a practicing lawyer. The status of part-time Municipal Court judgeships was abolished in 1969,[3] but Judge Williams continues to hold office as a judge by reason of holding over pursuant to law,[4] despite the expiration of his term in 1978. In about six months, however, Judge Williams' part-time judicial position will be abolished by reason of the merger of the Municipal Court and the Court of Common Pleas.[5]

Article IV, Section 37, of the Delaware Constitution confers authority on the Court on the Judiciary to censure, suspend,[6] remove or retire a judge for persistent misconduct in violation of the Canons of Judicial Ethics, as adopted by the Supreme Court. The Constitution also provides authority to discipline a judge for wilful misconduct in office, wilful failure to perform duties or the commission of an offense involving moral turpitude. None of those elements is before us in this proceeding. Thus, the operative constitutional provision here is that which authorizes the Court to discipline a judge for "other persistent misconduct in violation of the Canons of Judicial Ethics."

The acts of alleged persistent misconduct at issue here are as follows:

A. Failure to pay withholding and property taxes.

B. Failure to pay parking fines.

C. As a lawyer, filing false certifications with the Delaware Supreme Court.

The following Canons of Judicial Ethics of the Delaware Judges' Code of Judicial Conduct, adopted by the Supreme Court, are implicated.

## Canon 1. A judge should uphold the integrity and independence of the judiciary.

A. An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing high standards of conduct, and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

## Canon 2. A judge should avoid impropriety and the appearance of impropriety in all activities.

A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence

---

1. Designated pursuant to art. IV, § 37, to replace former Chancellor William T. Allen, who recused himself because of the imminent expiration of his term.

2. *Del. Const.,* art. IV, § 37.

3. 56 *Del.Laws* 188 (1967) enacted a new provision, 10 *Del.C.* § 1702(e), prohibiting Municipal Court Judges from practicing law while serving as a judge, except that a judge then serving was granted the option to complete his term without regard to that prohibition. Judge Williams is the only member of the Delaware judicial conference who is not prohibited from practicing law. DEL. JUDGES' CODE OF JUD.CONDUCT Canon 5F.

4. *Del. Const.,* art. XV, § 5 (providing officers to hold office until successors qualify).

5. *See* 71 *Del.Laws* 176 (1997), discussed *infra* at pp. 834–835.

6. The power to remove includes the power to suspend. *In re Rowe,* Del.Jud., 566 A.2d 1001, 1003 (1989).

in the integrity and impartiality of the judiciary.

### Procedural Background

Following the publication of certain articles in *The News Journal* regarding Judge Williams' alleged unpaid parking tickets and unpaid taxes, Judge Williams requested, in writing, that the Court on the Judiciary undertake an investigation. The Chief Justice assigned these matters to a panel of the Preliminary Investigatory Committee (PIC) of the Court on the Judiciary, pursuant to the rules of the Court.[7] That panel, consisting of Paul H. Boswell, Esquire (Chair), Edmund N. Carpenter, II, Esquire, and Mr. James H. Gilliam, Sr., investigated and concluded that there was probable cause to believe that Judge Williams was subject to sanctions under Article IV, Section 37, of the Constitution.[8] The Chief Justice, accordingly, appointed a Board of Examining Officers (the Board).[9] The Board consisted of the following judicial officers: Vice Chancellor (now Chancellor) William B. Chandler III (Chair), Supreme Court Justice William Duffy (retired),[10] and Superior Court Judge William T. Quillen.

### Findings of Fact

The Board held a two-day evidentiary hearing and issued a report making certain findings of fact, conclusions of law and recommended sanctions. We have independently reviewed the record and the report. We adopt substantially the findings of the Board as our findings of fact. We have concluded that the Board's findings of fact and conclusions of law on the merits are supported by clear and convincing evidence.

### A. Failure to Pay Taxes

#### 1. Withholding Taxes

As of March 26, 1996, Judge Williams owed a total of $113,245.09 for unpaid federal, state and city payroll taxes for his law firm's employee payroll. These taxes included employee income tax, FICA, unemployment and Medicare. All these taxes were paid in full by the date of the hearing before the Board. Judge Williams admits he failed to pay these taxes in a timely manner, but claims that his secretary, upon realizing that the law firm did not have the funds to pay both office expenses and taxes, decided to pay the office expenses and failed to tell him that the taxes were not paid because she was worried about his health.

In addition to failing timely to pay the taxes, Judge Williams failed timely to file withholding reports. In some cases these reports were as much as two years late. He claims these reports were prepared by his accountant and timely signed and submitted to his secretary for mailing. Once he found out in 1993 that his secretary had not filed the reports, he immediately directed her to do so. Some of these reports were returned because the City would not accept filing without payment.

#### 2. Property Taxes

On March 13, 1996, *The News Journal* reported that Judge Williams owed over $37,000 in unpaid County property taxes. As of March 18, Denbuck Realty[11] owed $5,291.14 in unpaid County property taxes. The day after *The News Journal* article, he paid $22,083 in taxes on his personal residence. The following day he paid an additional $2,745.05 for property taxes on three of his other eighteen properties. Shortly thereafter, he agreed to pay the remaining taxes, including those for properties owned by Denbuck Realty, at a rate of one property per month, starting with a first payment on May 1. He failed to make a payment on May 1. Except for a $5,000 payment on May 31, 1996, apparently made in response to an inquiry from

---

7. *See* Ct.Jud.R. 4(d); *In re Williams*, Del.Jud., C.J. No. 3, 1996, Veasey, C.J. (March 20, 1996) (Order).

8. *See* Ct.Jud.R. 5(b).

9. *See* Ct.Jud.R. 6; *In re Williams*, Del.Jud., C.J. No. 3, 1997, Veasey, C.J. (June 17, 1996) (Order).

10. The Court notes most sadly the death of Justice Duffy on September 24, 1997.

11. Judge Williams and his secretary, Kim Jenkins, are the sole officers and directors of Denbuck. Judge Williams' children are the sole stockholders.

the County, he made no further payments until the morning of the Board's hearing, September 5, 1996. At the hearing, a representative of the County's Department of Finance testified that Judge Williams' currently due taxes totaled over $15,000 with just under $10,000 of that amount currently delinquent.[12] His pattern with respect to real estate taxes was to ignore them until the property was sold, the property was threatened with monition or he was otherwise pressured to pay them.

## B.  Parking Tickets

On March 5, 1996, the City of Wilmington posted a list in *The News Journal* of the top parking scofflaws. Judge Williams was identified as owing $2,328 in fines on eighty-one tickets. A separate article revealed that he paid these fines in full the day before publication of the article. The original information about his unpaid tickets, as published in *The News Journal,* was not correct. Only sixty-six tickets, not eighty-one as the newspaper article stated, were issued to vehicles owned by or registered to Judge Williams. Furthermore, thirty-seven of these sixty-six tickets were issued to a license plate and car that no longer belonged to him. The evidence indicates that Judge Williams actually had about twenty-nine parking tickets outstanding in March 1996 for vehicles owned by him or registered in his name.

The City of Wilmington periodically mails notices of unpaid parking tickets to the address of the vehicle's registered owner. For the ticketed vehicles owned by Judge Williams, this address was a home he formerly shared with his wife. Between 1985 and 1993 he did not live at this address, and he stated that he did not receive notices of tickets during this period.

By September 1989, Judge Williams had accumulated twelve outstanding unpaid tickets on his Mercedes Benz. Some of these tickets were issued almost three years earlier. Because his car was about to be towed, he marked three of the tickets with the words "pay" or "will pay," marked the remaining nine with a check mark (indicating they were to be protested) and gave all twelve tickets to Municipal Court Commissioner Laurence Fitchett for him to protest or present for payment. Mr. Fitchett briefly attempted to protest the nine tickets that Judge Williams had indicated he would not pay, but abandoned his effort because he did not believe it was his "role to do so at the Department of Revenue." Instead, Mr. Fitchett personally paid for all twelve tickets, told Judge Williams that all twelve were "satisfied," but requested repayment for only the three that Judge Williams had indicated he would pay. Judge Williams received the receipt indicating that Mr. Fitchett had paid for all twelve tickets, but he did not question why Mr. Fitchett requested reimbursement for only three.

In August 1990, Judge Williams' Chevrolet was booted.[13] Mr. Fitchett obtained a printout of outstanding tickets and marked those that he thought Judge Williams would pay.[14] Mr. Fitchett paid cash for seventeen tickets and the boot fee, but requested reimbursement for only eight tickets. Again, Judge Williams was provided with the receipt, but never questioned what happened to the other tickets.

In October 1992, Judge Williams' Mercedes Benz was booted. He provided Mr. Fitchett with tickets for the Mercedes that were marked "pay" as well as tickets for the Chevrolet marked "pay." Mr. Fitchett personally paid for a total of twenty-seven tickets and the boot fee, but requested reimbursement for only fourteen. Again, Judge

---

12. The record is not clear whether or not these taxes have finally been paid, but we assume, without deciding, for present purposes that all taxes have either now been paid or that satisfactory arrangements for payment have been made.

13. Judge Williams is the registered owner of this vehicle. Although he claims that his son is the primary driver, Judge Williams admits he drove this vehicle occasionally.

14. Apparently Mr. Fitchett marked those tickets within the two-block radius of the courthouse as one that Judge Williams would pay. It is not clear whether Mr. Fitchett followed this criterion because Judge Williams used it in 1989 or because he was told to use this criterion by a bailiff or by Judge Williams.

Williams never questioned what happened to the remaining tickets.

In 1993, Judge Williams moved back to the home he formerly shared with his wife. He stated that at this time he stopped relying on Mr. Fitchett to help him identify outstanding tickets because he had returned to the address of the registered owner of his vehicles—the address where ticket notices were mailed. Mr. Fitchett tells a slightly different story. On January 25, 1993, he sent a note to employees of the courthouse requesting that he no longer be asked to handle the payment of tickets. According to this record, Judge Williams was the only person who ever requested Mr. Fitchett's help in this regard.

Between December 1993 and September 1995, sixteen notices covering ten different tickets on the Mercedes Benz were mailed to Judge Williams' home. Other tickets were issued for other vehicles in his name during this period. Records supplied by Judge Williams indicate that, as of March 4, 1996, the City's computer records identified a zero amount due on seven of the ten tickets, despite the fact that all seven tickets had fines and, in some cases, penalties attached. Furthermore, at least two of these tickets were dismissed after the allowable twenty-one day protest period.[15] The uncancelled fines were not paid until *The News Journal* inquiries were published.

Judge Williams testified that it was (and is) established Municipal Court policy to dismiss tickets received within a two-block radius of the courthouse if the employee was forced to park in the ticketed spot because that employee's designated parking spot was blocked by construction or by another vehicle. He also stated that this policy allowed him to have tickets dismissed within this radius even if he was not on judicial business at the time. According to Judge Williams, some of the ten tickets he received after 1993 were issued when his parking space was blocked and he was forced to park elsewhere. Thus, Judge Williams deliberately parked in

violation zones and sent the resulting tickets to be "canceled" according to the Court's policy.

Judge Williams claims that there is no evidence that he ever parked illegally. In his response to the Report of the PIC, however, he states that when he received tickets for parking in the street when his space was blocked, he submitted those tickets for dismissal. Furthermore, tickets presented to Mr. Fitchett for payment or dismissal included violations for "Police Veh[icles] Only," "U.S. Marshall Only," "Library Vehicles Only," "Bus Stop," "Handicap Zone," "Loading Zone," "Crosswalk," and "Street Cleaning."

### C. Supreme Court Certification

As a member of the Delaware Bar and a practicing lawyer, Judge Williams was at all relevant times required by Rule 1.15 of the Delaware Lawyers' Rules of Professional Conduct and Interpretive Guideline No. 2 promulgated thereunder to maintain proper accounts and to make appropriate periodic certifications to the Delaware Supreme Court.

Judge Williams' 1995 Supreme Court Certificate of Compliance represented that he had complied with client account reconciliation requirements when, in fact, he had not. The 1995 Attachment to the Certificate of Compliance required the responding lawyer to answer "yes," "no" or "not applicable" to several questions including the following:

3) For each bank account, a reconciliation is performed monthly, proving totals from the cash receipts and cash disbursement journals to the ending checkbook balance (if using a manual system) or computer-generated ending balance.

4) Checkbook (or computer-generated) balances for *all* bank accounts are reconciled monthly to bank statement balances.

---

**15.** Tickets state that the recipient has twenty-one days to protest the ticket. In December 1994 and January 1995, Judge Williams received parking tickets that were not dismissed until November 17, 1995, well after the allowable twenty-one

day protest period. He claims that there is no evidence that these tickets were "protested." Apparently he claims that these were appropriately "dismissed" and "dismissals" do not fall under the twenty-one day protest period.

5) For escrow accounts:

* * *

b) Monthly listings of client balances are prepared showing client name, balance, and the total of all client balances.

c) Each month a reconciliation procedure is performed proving beginning balance, cash receipt, and cash disbursement journal totals to the end of month cash in bank and to the total of the client balance listing. (The bank reconciliation for the escrow account is not complete unless it agrees with the total of client accounts.)

Judge Williams was found by the Board to have answered "yes" to questions 3, 4, 5(b) and 5(c) when the correct answer to each of the four questions was "no." There is no dispute that Judge Williams' responses to these questions are incorrect.[16]

This is the third time that Judge Williams (as a lawyer) has been subject to discipline for failing properly to maintain his law office's books and records. It is the second time that he has incorrectly answered questions 3, 4, 5(b) and 5(c) on the Supreme Court Certificate of Compliance. His first failure to answer these questions correctly resulted in a 1989 recommendation of a public reprimand by the Board on Professional Responsibility. The Supreme Court approved that recommendation.

On March 14, 1996, a Certified Public Accountant hired by Judge Williams started a "crash program" to bring his books and records into compliance. The CPA started with records for 1991 as those figures were the most recent figures in agreement. Apparently those figures were in agreement only because of the previous disciplinary action. Records since then are not in compliance.

Judge Williams stated that his secretaries told him they performed the reconciliation work. His accountant claims that he told Judge Williams' secretary to answer "no" to the four questions asking if the proper procedures had been followed. The answers, however, were recorded by the secretary as "yes" and Judge Williams filed the Certificate with his signature. He is accountable for these incorrect answers, which the Board found to be "false."[17] Although Judge Williams questions the harshness of this term, we believe it to be apt. We find that deliberate deception or, at best, an unprofessional lack of concern for correctness can be inferred from this record. There is a clear expectation that a professional be sensitive to providing accurate information to a regulatory body, in this case, the Supreme Court.[18] Judge Williams did not live up to that expectation.

### Conclusions of Law

#### A. Withholding and Property Taxes

Judge Williams failed to pay timely as much as $130,000 in federal and state payroll taxes and $37,000 in county property taxes. His deliberate pattern was not to pay taxes on a particular property until he desired to sell the property or until the property was threatened with monition, or until his failure to pay was made public. That pattern re-

---

**16.** The record, reflecting some confusion at the Board hearing, includes a copy of the attachment to Judge Williams' 1996 certificate of compliance that was filed with the Supreme Court and a copy of a draft version of the attachment to Judge Williams' 1995 certificate of compliance. To clarify the record, the Court has taken judicial notice of the 1995 attachment that was filed with the Supreme Court. The 1995 attachment conforms to the draft version of that document with the exception that question 4, that was left blank on the draft version, is answered "yes" on the attachment. The record, as so supplemented, reflects that, in both 1995 and 1996, Judge Williams answered "yes" to questions 3, 4, 5(b) and 5(c).

**17.** The dictionary definition of the word "false" is as follows:

> **false** .... **1.** not true or correct; erroneous: *a false statement.* **2.** uttering or declaring what is untrue: *a false witness.* **3.** not faithful or loyal; treacherous: *a false friend.* **4.** tending to deceive or mislead; deceptive: *a false impression.* **5.** not genuine; counterfeit. **6.** based on mistaken, erroneous, or inconsistent impressions, ideas, or facts: *false pride....*
> Random House Unabridged Dictionary (2d ed.1993).

**18.** *See In re Mekler,* Del.Supr., 669 A.2d 655-66 (1995) (definition of professionalism applicable to lawyers).

sulted in delinquencies lasting as long as six years. In addition to this failure timely to pay taxes, he has also failed consistently to file required payroll withholding reports with federal, state and city authorities.[19] Both failures are serious, but the latter is the more serious.

We hold that these failures by Judge Williams show a persistent pattern of misconduct in violation of Canons 1 and 2. He knew that property taxes on his properties were not being paid on a timely basis. He acted deliberately and persistently in refusing to pay these taxes. He also knew or should have known that the withholding taxes and forms were not filed or paid in a timely manner. By persistently failing timely to file his tax reports and to pay his property and employee withholding taxes, he placed himself above the law. He repeatedly displayed a cavalier attitude toward the law and toward the obligation of all citizens to support their government and to comply with its legal requirements. Not only did he fail to pay in a timely manner property taxes he admits he owed, but he also failed to pay some of his delinquent property taxes in accordance with a schedule he and the County had agreed upon.

Judge Williams attempts to justify his failure to pay property taxes by pointing to his financial difficulties resulting from domestic problems and relating to his law practice. He also cites the need to devote more time to his judicial position than he thought would be necessary, resulting in less time for his private law practice.[20]

The Court is sympathetic to Judge Williams' problems at these understandably difficult times. As a justification for misconduct, however, it is unavailing. All property owners have an obligation to pay taxes due on their properties. A citizen, despite financial and personal problems, must pay. If a taxpayer is unable to meet his or her proper-

ty tax obligations, the taxpayer has the same recourse that was available to Judge Williams—to sell the property on which the taxes are owed in order to reduce the tax burden. Rather than take these steps to avoid tax delinquencies on various properties, he adopted the practice of not paying property taxes until he desired to sell the property, the property was threatened with monition, or he was otherwise pressed to pay the taxes.

The Court finds that Judge Williams' failure to pay property taxes, his failure to transmit withheld taxes in a timely fashion and his failure to file timely reports as required by law constitute a persistent and continuing violation of Canon 1 of the Delaware Judges' Code of Judicial Conduct. The comment to Canon 1 provides, in pertinent part, as follows:

> Although judges should be independent, they should comply with the law, as well as the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

\* \* \*

The Code may also provide standards of conduct for application in proceedings pursuant to Article IV, Section 37 of the Delaware Constitution although it is not intended that disciplinary action would be appropriate for every violation of its provisions. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the violation, the intent of the judge, whether there is a pattern of improper activity, and the effect of the im-

---

**19.** It should also be noted that Judge Williams' judicial salary is currently subject to an agreement with the Internal Revenue Service whereby money is paid directly to the IRS in order to resolve a prior income tax deficiency claim.

**20.** This Court notes that the Municipal Court was understaffed for a considerable period of time

because of another judicial vacancy that was not promptly filled. Hence, Judge Williams did voluntarily extend his hours and was quite willing to assist the court beyond the hours he was committed to serve. The Court has considered this admirable undertaking as part of the mitigating factor relating to his judicial career.

proper activity on others or on the judicial system. Many of the proscriptions in the Code are necessarily cast in general terms, and it is not suggested that disciplinary action is appropriate where reasonable judges might be uncertain as to whether or not the conduct is proscribed.

The Court also finds a violation of Canon 2A of the Delaware Judges' Code of Judicial Conduct. The comment to Canon 2 provides as follows:

Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all acts, the proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules or other specific provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired. A judge does not violate this Code merely because a personal or judicial decision of the judge may be erroneous.

Judge Williams argues that the provision of the Constitution authorizing this Court to impose sanctions for "other persistent misconduct" does not permit sanctions for conduct that is "merely" negligent. This view represents a reading of the Constitution that is far too narrow. The record here goes well beyond a showing that there were a few isolated and innocuous instances of negligence. We have found a deliberate and persistent pattern evidencing a flagrant disregard for the normal responsibilities of a citizen. In view of the proper and stern injunctions of the Canons, this record is appalling in its pattern of irresponsibility. In particular, the failure to remit taxes withheld on employees' wages is a serious offense and is particularly reprehensible since these funds are deemed to be held in a fiduciary relationship.[21] How can it not be said that these acts constitute persistent misconduct?

### B. Parking Tickets

Judge Williams' failure promptly to pay his parking tickets is not excused by his claims of lack of notice. He, or the driver of his car, received notice in the form of the ticket every time a ticket was issued. Yet sometimes, even when he received such a notice, he waited almost three years before paying or protesting the tickets. Furthermore, notices of unpaid tickets periodically are sent to registered owners of vehicles. The City, before posting notices in *The News Journal,* mailed a special letter identifying outstanding tickets on February 21, 1996, to top "scofflaws," including Judge Williams. Even though he may not have lived at his home during some of this time, it was his legal responsibility to notify the Department of Motor Vehicles of his current address (and thereby the location of his vehicles for proper notification purposes).

He also responds by stating that his children, and possibly his law office employees, drove some of his cars and are to blame for many of the tickets. But it is not the responsibility of the police or the courts to track down drivers of vehicles of registered owners. Judge Williams has not identified other drivers willing to accept responsibility for tickets on his cars.

Judge Williams also attempts to excuse his receipt and dismissal of tickets by relying on what he describes as "the policy of the court ... to dismiss tickets issued for vehicles which were required to park on the street because they were unable to access the as-

---

**21.** *See In re Disciplinary Action Against Gurstel,* Minn.Supr., 540 N.W.2d 838, 841 (1995).

signed parking area." Whether or not the policy exists, it does not alter the fact that Judge Williams delayed paying or protesting tickets, often for extended periods of time.

We find that the evidence shows clearly and convincingly that Judge Williams deliberately parked in violation zones, that he delayed (in some cases for almost three years) the payment of tickets, and that he allowed his tickets to be successfully protested beyond the twenty-one day period. The evidence does not show that he dismissed his own tickets, and he is not charged with such an act of misconduct. Nevertheless, the Municipal Court's ticket dismissal procedures [22] tend to create the appearance in the mind of a reasonable person that Judge Williams did dismiss his own tickets.[23]

We hold that Judge Williams' failure to pay or to protest his tickets in a timely manner was a violation of the following provisions of the Delaware Judges' Code of Judicial Conduct:

**Canon 1.** A judge should participate in establishing, maintaining and enforcing high standards of conduct, and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved; and

**Canon 2A.** A judge should respect and comply with the law.

### C. Supreme Court Certification

This is the third time that Judge Williams has been subject to discipline for failing properly to maintain his law office's books and records. It is the second time that he has incorrectly answered questions 3, 4, 5(b) and 5(c) on the Supreme Court Certificate of Compliance. His first failure to answer these questions correctly resulted in a 1989 public reprimand.

He is responsible for filing accurate and complete responses on the Certificate of Compliance, as is every other active member of the Delaware Bar. His personal obligation to ensure the accuracy of the Certificate is not excused by his reliance on his secretary and accountant to provide accurate responses. A lawyer must sign the Certificate of Compliance, attesting personally to its accuracy and completeness. Considering that he previously had been reprimanded for incorrectly answering the *same questions,* the Court finds that Judge Williams should be charged with the knowledge that, in his circumstances, his answers were false. He should have been especially sensitive to the need for accuracy. By allowing the Certificate to be filed with false answers, he violated Canon 2A ("A judge should respect and comply with the law") of the Judges' Code of Judicial Conduct.

### The Appropriate Sanction

The matter of the appropriate sanction in this case is a vexing and difficult issue. In particular, it should be kept in mind that the violations here do not involve moral turpitude or misconduct in the performance of Judge Williams' official duties. Nevertheless, the Court has found significant acts of persistent misconduct in violation of the Canons of Judicial Ethics.

The majority of the Board recommended a public censure and a six-month suspension from judicial service. The minority concluded that a public censure would be sufficient under the circumstances. This Court's responsibility to determine the appropriate sanction is plenary, and we approach the task *de novo.*

The aggravating circumstances involved in the misconduct found by the Court are detailed above. In sum, these findings evidence acts of irresponsible and persistent misconduct that tend to bring the judiciary into ill repute. We must, however, consider the relative severity of the several findings of persistent misconduct. The failure to pay

---

**22.** Protested tickets are reviewed by the presiding judge, who decides which protests will be allowed. The actual ticket dismissal, however, may not occur until days or weeks later, at which time the bailiff marks the tickets with the date and the then-presiding judge's initials. In this case, the procedure resulted in some of Judge Williams' tickets being marked with his own initials, even though he was not the judge who made the decision to allow the protest.

**23.** Such a policy, if it exists, must be terminated. We trust the Municipal Court will act accordingly, if it has not done so already.

withholding taxes is by far the most serious violation. Second in terms of severity is the repetition of the false certifications to the Supreme Court by Judge Williams in his role as a lawyer.[24] The persistent failures to pay property taxes and parking tickets are serious departures from the ethical obligations of a judge, but these violations are not as egregious as the failure to pay withholding taxes and the repeated false certifications to the Supreme Court.

We need not decide the abstract question of what would be an appropriate sanction on any one or the various combinations of these charges. If the mitigating factors discussed below were not present here, it is clear to us that the acts of misconduct in this case would warrant a public censure and a substantial period of suspension from judicial service. That theoretical sanction would likely be in excess of that which we will impose in this case. We need not further quantify that theoretical period of suspension, however, because the mitigating factors here are compelling and result in a significant amelioration of what would otherwise be appropriate.

We now turn to the mitigating circumstances. They include: (a) Judge Williams' personal and financial difficulties outlined above; (b) his long and otherwise distinguished record of judicial and community service; (c) the fact that Judge Williams ultimately paid, or made financial arrangements to pay, his delinquent taxes and parking tickets; (d) the fact that he requested this investigation (although undoubtedly it would ultimately have been undertaken by the Court on its own initiative); and (e) the fact that Judge Williams was not charged with any act of misconduct in the performance of his judicial duties. Because of these mitigating factors, we conclude that a public censure and a three-month suspension from judicial service and compensation are appropriate under the circumstances presented here. Those sanctions are hereby imposed, subject to the following qualification.

There is one additional phenomenon that is relevant here. That phenomenon impels us to a further amelioration. Judge Williams' status as a part-time judge is about to come to an end by reason of factors unrelated to these proceedings. After this case was argued, the General Assembly passed, and the Governor signed, legislation providing for the merger of the Wilmington Municipal Court with the Court of Common Pleas. That legislation is currently scheduled to become effective on or about April 10, 1998.[25] When the effective date arrives, there will no longer be any part-time judgeships. Only the current full-time judges of the Municipal Court will become judges of the Court of Common Pleas.[26] Since Judge Williams is not a full-time judge, his judgeship will cease to exist by operation of law.

Thus, we are dealing with a unique situation. Assuming that the merger implementation schedule continues roughly on the present track, Judge Williams' judicial service will be ending in a few months due to circumstances beyond his control. The sanction of a suspension for three months from all judicial service and remuneration, if imposed now, would take on added severity because it would effectively cut in half the remainder of Judge Williams' long and otherwise distinguished judicial career.

The Court has taken into consideration this happenstance as an additional factor that is relevant to the determination of the final sanction. Accordingly, the Court will withhold and will not implement the suspension of Judge Williams from judicial service, provided that he agrees in writing on or before November 1, 1997, to forfeit three months'

---

24. Repeat offenses often implicate suspension of lawyers from the practice of law, depending on the nature of the offense. *Cf. In re Lassen*, Del. Supr., 672 A.2d 988 (1996). This is relevant by analogy, but as an analogy it is not completely apt in this situation.

25. 71 *Del.Laws* 176 (1997). Section 44 provides that the legislation shall become effective 270

days after it is signed by the Governor. The date of the Governor's signature is July 14, 1997. It is, of course, not unlikely that this date may be postponed by further legislative action for logistical reasons relating to implementation issues.

26. *Id. See* § 5.

judicial compensation [27] without other diminution or reduction of his judicial service,[28] such forfeiture to commence January 1, 1998. If Judge Williams does not elect this alternative, he will be suspended from all judicial service and remuneration from November 1, 1997 through January 31, 1998.

### Entitlement to Reimbursement of Counsel Fees and Expenses

In this proceeding, John A. Parkins, Jr., Esquire was appointed to serve *pro bono publico* as the Presenter to assist the Board and the Court. The Court expresses its gratitude to Mr. Parkins, whose public service before the Board and the Court was in the highest professional tradition of the Delaware bar.

██ Victor F. Battaglia, Sr., Esquire was selected as counsel by Judge Williams and was appointed by the Board pursuant to Rule 9(d) of this Court and Rule 68 of the Supreme Court. Mr. Battaglia's service was likewise in the highest professional tradition of the Delaware bar. A petition was filed by Judge Williams for counsel fees pursuant to Supreme Court Rule 68. The Court will deny the petition, except to the extent hereinafter set forth.

Judge Williams has been unsuccessful in his defense with regard to the nonpayment of taxes and the false certification. He is not entitled to counsel fees in that connection. Moreover, the charges stemming from his failure to pay his property taxes and withholding taxes, as well as his failure to file an accurate Certificate of Compliance with the Supreme Court, do not constitute "acts arising out of his employment" as an Associate Judge of the Municipal Court. Judge Williams' failures were not related to duties or actions essential to accomplishing the primary purpose of a judicial office—that of conducting authorized judicial proceedings

and rendering judgments.[29] Accordingly, the Court finds that Supreme Court Rule 68 does not authorize payment of fees and costs at State expense on these issues.

As to the parking ticket violations, Judge Williams was partially successful, though he was found to have committed acts of persistent misconduct in connection with other grossly delinquent parking tickets. There was some evidence that certain parking violations arose out of an effort to park his car to conduct his judicial duties, pursuant to the dubious Municipal Court policy. Thus, we conclude that he may be reimbursed for reasonable legal fees and expenses to the extent that they are attributable to his successful defense of parking ticket violations.

Nevertheless, after Judge Williams was advised of the Court's October 6, 1997 ruling that he was entitled to counsel fees and expenses to the limited extent set forth above, he voluntarily waived his entitlement to such fees and expenses. Accordingly, he has withdrawn his request for reimbursement. Therefore, the matter of reimbursement of such fees and expenses is now moot.

**NOW, THEREFORE**, this 8th day of October, 1997, Judge Williams' counsel and the Presenter having been advised of the decision of the Court on October 6, 1997, and Judge Williams' counsel having filed with the Court letters dated October 6, 1997, electing to forfeit three months' compensation, effective January 1, 1998, without diminution or reduction in his judicial service and instructing the Treasurer of the City of Wilmington to carry out the forfeiture, and Judge Williams having voluntarily withdrawn his request for reimbursement of counsel fees and expenses,

**IT IS ORDERED** as follows:

1) Judge Leonard L. Williams is hereby publicly censured and suspended in accor-

---

**27.** The Court notes that Judge Williams has an agreement with the IRS concerning direct payment from his judicial salary (*see* n. 19, *supra*). Some alternative measures may be required to accommodate that arrangement and the forfeiture or suspension here.

**28.** As noted above, Judge Williams was not charged with any act of misconduct in carrying

out his judicial duties. Accordingly, there is no potential harm to the public if he is permitted to continue those judicial duties with his pay forfeited for that three-month period.

**29.** *In the Matter of David P. Buckson,* Del.Jud., 616 A.2d 327, 331 (1992).

dance with the terms of the Opinion of the Court set forth above, subject to the following provisions of this Order.

2) The Court hereby withholds the suspension and its implementation in view of Judge Williams' written decision to forfeit three months' compensation without diminution or reduction of his judicial service.

3) Accordingly, Judge Williams shall forfeit, and shall not be entitled to receive, such three months' compensation effective January 1, 1998, but this shall not diminish or reduce his judicial service during such period.

4) The request by Judge Williams for counsel fees and expenses having been withdrawn, that issue is now moot.

5) Pursuant to *Del. Const.*, art. IV, § 37, the foregoing Opinion and Order of this Court and the letters of October 6, 1997 to the Court and to the City Treasurer from Judge Williams' counsel are released from the confidentiality provisions of the Constitution. All other proceedings and records herein are covered by the following constitutional provision:

All hearings and other proceedings of the Court on the Judiciary shall be private, and all records except a final order of removal or retirement shall be confidential, unless the judicial officer involved shall otherwise request.